**Jeanne RASCHE, Plaintiff,**

v.

**BOARD OF TRUSTEES OF the UNIVERSITY OF ILLINOIS et al.,
Defendants.**

**No. 71 C 2959.**

United States District Court,
N. D. Illinois, E. D.

Dec. 21, 1972.

George M. Covington, Donald L. Johnson, Ms. Chloe Arlan, Edward Parsons of A.C.L.U., Chicago, Ill., for plaintiff.

James T. Otis, James J. Costello, Richard F. Prendergast and Robert C. Keck, of Price, Cushman, Keck & Mahin, James R. Thompson, U. S. Atty., Chicago, Ill., for defendants.

Before KILEY, Circuit Judge, and WILL and McMILLEN, District Judges.

## OPINION

WILL, District Judge.

Plaintiff seeks a declaration that section 504(a) of the Higher Education Act, as amended, 20 U.S.C. § 1060(a), is unconstitutional on its face and as applied to her, as well as an injunction restraining defendants and their agents from enforcing the statute against her. The section in question provides in pertinent part as follows:

> (a) If an institution of higher education determines, after affording notice and opportunity for hearing to an individual attending, or employed by, such institution, that such individual has been convicted by any court of record of any crime which was committed after October 16, 1968, and which involved the use of (or assistance to others in the use of) force, disruption, or the seizure of property under control of any institution of higher education to prevent officials or students in such institution from engaging in their duties or pursuing their studies, and that such crime was of a serious nature and contributed to a substantial disruption of the administration of the institution with respect to which such crime was committed, then the institution which such individual attends, or is employed by, shall deny for a period of two years any further payment to, or for the direct benefit of, such individual under any of the programs specified in subsection (c) of this section.
>
> . . .

Plaintiff contends that the section is unconstitutionally vague and overbroad and exerts a chilling effect on freedom of speech, association and assembly. She asserts particularly that the standards of "crime . . . of a serious nature" and "substantial disruption of the administration of the institution" are so vague and overbroad as to be invalid.

The defendants have moved to dismiss the complaint on the ground that the statute is constitutionally valid. Since the complaint raises a substantial constitutional issue, a three-judge court has been convened pursuant to 28 U.S.C. § 2282 and has taken the defendants' motions under advisement on the parties'

briefs. No further hearing has been requested or is necessary under 28 U.S.C. § 2284. The only issue in the case is the facial constitutionality of the statute in question. Since we find that section 1060(a) is facially unconstitutional, the defendants' motions to dismiss will be denied.

The facts as alleged in the complaint and which, for the purposes of the ruling on the defendants' motions to dismiss, we must accept as true and correct, are as follows:

Plaintiff was a graduate student in the Department of Philosophy at the Chicago Circle Campus of the University of Illinois during the 1970–1971 school year. She had been enabled to pursue her studies by virtue of having received a federal loan under the National Defense Education Act (20 U.S.C. §§ 421–429), since she had no independent means of support.

On May 6, 1970, plaintiff, along with approximately 1,500 other students, participated in a non-violent demonstration on the Chicago Circle Campus protesting the United States involvement in the war in Southeast Asia and the shootings at Kent State University and Jackson State University. The demonstration began elsewhere on the campus on May 6, 1970, but moved to the ROTC Building on Roosevelt Road at about noon in order to protest the existence of the ROTC program on campus. At that time, all personnel inside were told to leave by university officials "because there were demonstrations outside the building, demonstrators passing leaflets, etc." Several hours later, about 50 students, including plaintiff, entered the empty building and staged a peaceful "sit-in" demonstration in an unused part of the building, which lasted until their arrest at approximately 10:20 P.M. on May 6.

As a result of her participation in the "sit-in" demonstration, plaintiff was convicted of the offense of "Criminal Trespass to State Supported Land" (Ill. Rev.Stat. ch. 38, § 21–5 (1969), a mis-demeanor, and was fined $20. On January 21, 1971, former Chancellor Norman A. Parker notified plaintiff that her "conviction . . ., if true, will disqualify . . . [her] from further assistance under the N.D.E.A. student loan program." Assistant Chancellor Robert P. Bentz was appointed hearing officer "to determine the truth of this charge against . . . [her]." Following a hearing conducted by University officials, the hearing officer issued findings of fact in which he found among other things that:

1. A demonstration of approximately 1500 persons began outside the ROTC Building located at 728 West Roosevelt Road, Chicago, Illinois, at approximately 1:00 P.M. on May 6, 1970.

2. The ROTC Building was closed by the administration for security reasons sometime before 2:00 P.M., despite the normal closing hour of 5:30 P.M., because of the activities of the demonstrators outside the building. (No finding was made as to the nature of these "activities.")

3. A "sit-in" occurred in the ROTC Building on the afternoon and evening of May 6, 1970, beginning at approximately 2:30 P.M., after the building had been closed and most of the personnel had left, and continuing until about 10:00 P.M.

4. As a result of the ROTC Building being closed, certain of the University placement and ROTC personnel could not perform their duties, thus causing a disruption of the activities of the University.

5. Miss Rasche freely and voluntarily participated in the demonstration outside the building and in the "sit-in" and, despite being ordered to leave the building by Deputy Chief of the University Police Arnum, remained in the building until arrested and removed about 10:00 P.M.

6. The misdemeanor of "Criminal Trespass to State Supported Land" is a "serious crime."

7. There was physical violence following the arrest of Miss Rasche and the other participants which would not have occurred but for the "sit-in" and the arrest of the participants.

8. Miss Rasche neither injured any person nor damaged any property before, during or after the "sit-in" nor did she instigate, encourage, aid or abet any such action by others.

9. Title 20 U.S.C. § 1060(a) is constitutional.

10. Miss Rasche should be declared ineligible under the provisions of 20 U.S.C. § 1060(c) for financial aid for a period of two years beginning December 17, 1970.

■ One principal deficiency of Section 1060(a) is its failure to adequately define a "crime of a serious nature." The use of that phrase as a condition of disqualification brings Section 1060(a) within the ambit of Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Speaking in that case of a "penal" statute, the court said at p. 391, 46 S.Ct. p. 127: "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Although Section 1060(a) is not a penal statute, its effect is punitive and subjects it to the same test. Cf. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Soglin v. Kauffman, 418 F.2d 163 (7 Cir. 1969).

The phrase "crime of a serious nature" does not have a generally understood meaning, is not one commonly used in the law or elsewhere, and can mean different things to different persons. A somewhat more precise phrase, "misdemeanor involving moral turpitude," was held unconstitutionally vague in Corporation of Haverford College v. Reeher, 329 F.Supp. 1196 (E.D.Pa. 1971). In short, the term "crime of a serious nature" is too susceptible of subjective interpretation to fairly advise

in advance what in fact a student is forbidden to do. A student has a right to fair warning under the Fourteenth Amendment to our Constitution, and the failure to give this warning violates the First Amendment. *See* Giaccio v. Pennsylvania, 382 U.S. 399, 402–403, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

While the action of the hearing officer in the instant case in finding that the misdemeanor of which Miss Rasche was convicted and fined $20 was a "serious crime" does not necessarily prove the vagueness of the term, it demonstrates that one presumably intelligent individual, the Assistant Chancellor of the University, believed that a minor offense could properly be found to be a "serious crime." This pragmatic demonstration of the ambiguity of the phrase supports the conclusion that it is so susceptible of subjective interpretation as to be unconstitutionally vague.

The other standard of Section 1060(a) challenged by plaintiff is the requirement that the serious crime shall have "contributed to a substantial disruption of the administration of the institution." This provision has two criteria which are either vague, overbroad or both. The first is the requirement that the action which constituted the serious crime "contributed to" a substantial disruption. Must the causal relationship between the action and the disruption be direct and substantial or may it be remote and minute?

■ The instant case again demonstrates the potentialities of such vague language. Apparently, as the hearing officer found, the ROTC Building was closed by the administration at about 2:00 P.M. because there were demonstrators on the sidewalk outside. This caused the placement and ROTC personnel to terminate their work for the day. This action constituted the disruption which the hearing officer found had occurred. It was followed by the "sit-in" which started at 2:30 P.M., and continued until 10:00 P.M. when plaintiff and the other participants were arrested. Yet the hearing officer, the University's

Assistant Chancellor, had no apparent difficulty in finding that the "sit-in" which started a half hour after the building had been closed "contributed" to the disruption. It may be urged that the hearing officer simply misapplied the language of the statute, but vague language is susceptible of subjective interpretation or complete misinterpretation. This is precisely why penal or punitive statutes must be sufficiently precise as to give fair notice to persons whose actions may be subject to them as well as to provide effective standards for adjudication of their applicability. If a statute is so obscure that men of common intelligence must guess at its meaning or differ as to its applicability, it is unconstitutionally vague. *See* Connally v. General Construction Co., *supra;* Landry v. Daley, 280 F.Supp. 938 (N.D. Ill.1968), rev'd on other grds. sub nom. Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971).

The foregoing observations are equally applicable to the phrase "substantial disruption of the administration of the institution." Similar language in a Pennsylvania statute was considered by a three-judge court in Corporation of Haverford College v. Reeher, *supra.* The court there concluded (329 F.Supp. at 1207):

> Thus, a heavy penalty of deprivation of financial aid eligibility rides on the university's interpretation of words without any guiding standard. The student could not possibly know what would be a disruption in the opinion of the school, an opinion which may vary widely from institution to institution and from time to time. Under the statute, the word "disruption" acquires only such meaning as any given institution may attach to it at any given time. The subsection cannot constitutionally stand in the face of such manifest indefiniteness.

The instant case once again is pragmatic proof of the wisdom of the foregoing observations. The University's reaction to demonstrators on the sidewalk was to close the ROTC Building three and one-half hours earlier than the usual closing time. Was this a "substantial disruption to the administration" of the University? The Assistant Chancellor concluded that it was. The peaceful "sit-in" followed and was terminated by the arrest of the participants that evening. The next day business as usual presumably resumed in the ROTC Building.

In this connection, it may be observed that at least as applied by the Assistant Chancellor, the statute is overbroad in that it penalizes conduct protected by the First Amendment. The demonstrations on the sidewalk outside the building were clearly within the demonstrators' rights to free speech, association and assembly. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L. Ed. 1093 (1940). Even the peaceful "sit-in" at least up to the time the participants were ordered to leave the building, was protected activity. *See* Garner v. Louisiana, 368 U.S. 157, 82 S. Ct. 248, 7 L.Ed.2d 207 (1961).

Defendants urge that the ambiguous provisions of Section 1060(a) are saved by Section 1060(d) which provides:

> (3) Nothing in this section shall be construed to limit the freedom of any student to verbal expression of individual views or opinions.

This subsection preserves only the freedom of "verbal" expression whereas the First Amendment also guarantees such rights as peaceful picketing and wearing arm bands to protest the war. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Obviously the proviso is and was ineffective here to preserve the plaintiff's freedom of expression under the First Amendment.

One final obvious observation may be appropriate. Nothing here said or decided is intended to imply that Congress may not properly condition or withdraw federal aid to students under appropriately precise standards. The language of Section 1060(a), however, falls far

short of the minimum precision which due process demands.

. The motions to dismiss the complaint are denied. Since the only issue raised by the parties is the constitutionality of Section 1060(a), and since our conclusion is that the statute is facially invalid, no additional pleadings by the parties appear necessary. Accordingly, a declaratory judgment and injunction consistent with the foregoing will be entered.

McMILLEN, District Judge (concurring).

Although I concur with the result reached in the foregoing Opinion, I do not agree that the phrase "contributed to a substantial disruption of the administration of the institution" is unconstitutionally vague or overbroad when read in the context of the balance of Section 1060. Starting with the precept that a Congressional enactment should be upheld if possible, particularly when life or liberty are not at stake, I am persuaded that the foregoing term is specific enough to give a student fair warning of the kind of conduct which could jeopardize her federal assistance. Furthermore, the offender is given the added protection of a hearing by an official who is presumably qualified to apply this particular phrase, even though he might not be able to identify a "crime of a serious nature."

Few, if any, legislative enactments are flawless, and the courts' objective is to enforce them, not to edit them. This is particularly true in the case of a statute by which the Congress has expressed an important public policy. The Senate Committee Report which accompanied the bill stated:

The committee has been dismayed and alarmed by evidence of student unrest on the college campuses of this country which has been outwardly evidenced by rioting, trespass and forceful interference with the administration of the colleges and with the activities of students who wish to pursue their studies. Such activity is not to be countenanced in a society such as ours. Peaceful picketing and free speech are treasured rights which must be protected but unlawful and violent conduct cannot be condoned. [1968 U.S.Code, Cong. & Admin. News, pp. 4035, 4053]

Although there is no satisfactory objective measure by which to test a statutory phrase, the Supreme Court in Cameron et al. v. Johnson et al., 390 U. S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) sustained a Mississippi statute which prohibited picketing ". . . in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any . . . county . . . courthouses . . . ." At 390 U.S. p. 616, at 88 S.Ct. p. 1338, the Court stated:

The terms "obstruct" and "unreasonably interfere" plainly require no "guess[ing] at [their] meaning." Appellants focus on the word "unreasonably." It is a widely used and well understood word and clearly so when juxtaposed with "obstruct" and "interfere." We conclude that the statute clearly and precisely delineates its reach in words of common understanding. It is "a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be . . . proscribed."

The phrase "substantial disruption of the institution" leaves only a little more to the imagination than does the phrase in the Mississippi anti-picketing statute and, in my judgment, adequately advises a student and the hearing officer of the conduct which Congress intended to proscribe. If the foregoing quoted words pass muster, the balance of the phrase in Section 1060 should not require us to invalidate the statute. With all due respect, I believe that the majority's concern with the particular words in issue is based on an undue involvement with semantics such as the Supreme Court warned against in Cole v. Richardson, 397 U.S. 238 at 240, 90 S.Ct. 1099, 25 L. Ed.2d 275 (1968).