UNITED STATES of America,
Plaintiff-Appellee,

v.

An ARTICLE OF DRUG consisting of 1
drum of 104,000 tablets, more or less,
LABELED in part:
(drum)

"Name WHITE QUADRISECT Manu-
factured For Scrip, Inc., 101 South St.,
Peoria, Ill.   Quantity 104M Ticket No.
SI–31 Hyoscyamine Hbr. 0.4507 Mg. At-
ropine Sulfate 0.0372 Mg. Scopolamine
Hbr. 0.0119 Mg. Usual Adult Dose: ***
M/O–7–747 Caution: *** George N.
Bell Manufacturing Chemists 7044 East
30th Street, Indianapolis, Ind. 46219",
Defendant-Appellant.

No. 72–1349.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1973.

Decided Aug. 2, 1973.

George M. Burditt, Chicago, Ill., Kent
A. Noble, Peoria, Ill., for defendant-ap-
pellant.

Charles R. McConachie, Atty., Anti
Trust Div., U. S. Dept. of Justice, Wash-
ington, D. C., Stephen H. McNamara,
Health, Education & Welfare, Rockville,
Md., for plaintiff-appellee.

Before PELL and STEVENS, Circuit
Judges, and CAMPBELL,* Senior Dis-
trict Judge.

PER CURIAM.

Defendant appeals from an order con-
demning his property, a shipment of a
prescription drug,[1] under the Federal
Food, Drug, and Cosmetic Act, 21 U.S.C.
§ 301 et seq.   The lower court con-
demned the shipment because the de-
fendant's production procedure violated
the "current good manufacturing prac-
tice" (GMP) provision of the Act, 21 U.
S.C. § 351(a)(2)(B).   Appellant con-
tends that that provision is unconstitu-
tional under the Due Process Clause of
the Fifth Amendment because of its al-
leged vagueness.

---

* Senior District Judge William J. Camp-
bell of the Northern District of Illinois
is sitting by designation.

1. White Quadrisect Tablets.  The drug is
used in the treatment of spasms in the
gastro-intestinal/biliary tract.

The GMP provision stems from congressional concern over the danger that dangerously impure drugs might escape detection under a system predicated only on seizure of drugs shown to be in fact adulterated. In order to insure public safety,[2] Congress determined in 1962 that it was necessary to regulate the means of production themselves:

> "A drug . . . shall be deemed adulterated . . . if . . . the methods used in, or the facilities or controls for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice to assure that such drug meets the requirements of this chapter as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess. . . ." 21 U. S.C. § 351(a).

By way of implementation, the FDA has promulgated detailed regulations to spell out the precise requirements of the section. 21 C.F.R. § 133 et seq.

The district court found violations of GMP standards by defendant which include the failure to keep basic production records, inadequate testing of active ingredients before use, and insufficient tests of the finished product prior to shipment. These findings are not contested on appeal and we therefore consider them established.

In Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447, the Court stated: "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." Id. at 402–403, 86 S.Ct. at 520.[3]

Appellant contends that § 351(a)(2)(B) fails to meet this standard. We conclude that the term "current good manufacturing practice" adequately defines a standard which the Administrator was authorized to particularize in interpretative regulations. Defendant does not deny that the regulations, which he has plainly violated, were adequate to notify him that his conduct was prohibited.

Defendant's argument is based on attacks on the statutory terms "current" and "good." The term "current" was considered by the Supreme Court in Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. In Connally, the court struck down an Oklahoma statute which prohibited the payment of "less than the current rate of per diem wages in the locality where the work is performed." The crucial failing of the statute related to the nonexistence of any determinable current wage rate and the ambiguity of the term "locality." See 269 U.S. at 393–395, 46 S.Ct. at 128. Whatever strength the Connally decision has today, it does not compel the same result in a far different context. We have no trouble with the use of the word in § 351(a)(2)(B). The term "current" fixes the point in time when the acceptability of the relevant production practices must be determined. Thus, the statute does not per-

---

2. "The manufacturing of drugs is a business that requires highly qualified and trained personnel, and special laboratory and other facilities and most careful internal manufacturing, packaging, and labeling controls. These requirements are necessary to the assurance that the drugs will be safe for the user and will have, and so far as possible retain, the identity, strength, quality, purity, and effectiveness that they purport to have." H.R.Rep.No.2464, 87th Cong., 2d Sess.

2 (1962). See also 1962 U.S.Cong. & Admin.News, p. 2884.

3. See also Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322; Bouie v. Columbia, 378 U.S. 347, 351, 84 S.Ct. 1697, 12 L.Ed.2d 894; Musser v. Utah, 333 U.S. 95, 97, 68 S.Ct. 397, 92 L.Ed. 562; Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888.

mit prosecution for failure to follow safety practices which were not recognized prior to the production of the subject drugs.[4]

The term "good" likewise acquires adequate meaning when read in context even though, as defendant observes, a good dictionary lists a good many definitions of the word. Alternative definitions do not create impermissible ambiguity if the relevant definition is capable of interpretation by reference to objective criteria. We believe that § 351(a)(2)(B) affords sufficient guidance to avoid the problem encountered in Ricks v. District of Columbia, 134 U.S. App.D.C. 201, 414 F.2d 1097 (1965), and United States v. Margeson, 259 F.Supp. 256 (E.D.Pa.1966), where the challenged vagrancy statutes required one to give a "good account" of oneself. The word "good," as used in the GMP provision, is not unduly subjective.

The Constitution requires only a reasonable degree of certainty in statutory language:

"  .  .  .  [F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367.

Appellant also ignores the detailed regulations promulgated by the FDA which considerably illuminate the statutory language.[5] See 21 CFR § 133 et seq.

In view of the customary presumption of constitutionality [6] and the established high regard for the purposes of the Act,[7] we readily sustain the GMP provision. The language utilized by Congress in this statute is neither less certain nor more difficult to interpret than language elsewhere in the same Act which has been upheld. See United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297 ("adequate directions for use, . . . such adequate warnings

---

4. Appellant also argues that even if the section has a definite meaning, it creates a standard subject to such rapid change that a drug manufacturer is unable to ascertain at any point in time what is expected of him. This argument overlooks the interpretative regulations. In our opinion it is appropriate for the statute to authorize changes in regulations to reflect the Administrator's evaluation of "current" practice. We think the GMP standard is sufficiently fixed.

5. "[T]he Secretary's interpretative regulations as to good manufacturing practice for purposes of judging the adequacy of the methods, facilities, and controls would be prima facie evidence of what constitutes current good manufacturing practice in any proceeding involving [§ 351(a)(2)] of the Food, Drug, and Cosmetic Act as amended by the bill." 1962 U.S.Cong. & Admin.News, p. 2890.

6. United States v. National Dairy Prod. Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561; Federation of Labor v. McAdory, 325 U.S. 450, 465-466, 65 S. Ct. 1384, 89 L.Ed. 1725; United States v. L. Cohen Grocery Co., 255 U.S. 81, 92-93, 41 S.Ct. 298, 65 L.Ed. 516.

7. "The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation if it is to be treated as a working instrument of government and not merely as a collection of English words." United States v. Dotterweich, 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L. Ed. 48. See also United States v. An Article of Drug, 394 U.S. 784, 798, 89 S. Ct. 1410, 22 L.Ed.2d 726; United States v. Wiesenfeld Warehouse Co., 376 U.S. 86, 91, 84 S.Ct. 559, 11 L.Ed.2d 536; United States v. Urbuteit, 335 U.S. 355, 357-358, 69 S.Ct. 112, 93 L.Ed. 61; Kordel v. United States, 335 U.S. 345, 349, 69 S.Ct. 106, 93 L.Ed. 52; United States v. Sullivan, 332 U.S. 689, 696, 68 S.Ct. 331, 92 L.Ed. 297.

against use . . . dangerous to health, or against unsafe dosage . . . as are necessary for the protection of users"); United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 ("reasonable variations shall be permitted"); United States v. 2600 State Drugs, Inc., 235 F.2d 913 (7th Cir. 1956) ("not safe for use"). The same can be said of language contained in other statutes. See Cameron v. Johnson, 390 U.S. 611, 616, 88 S.Ct. 1335, 20 L.Ed.2d 182 ("unreasonably interfere") ; Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (obscenity); Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 ("restraint of trade"); Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 196, 57 S. Ct. 139, 81 L.Ed. 109 ("fair and open competition"); Bandini Petroleum Co. v. Superior Court, 284 U.S. 8, 18, 52 S. Ct. 103, 76 L.Ed. 136 ("unreasonable waste of natural gas").

Moreover, an argument identical to defendant's was made and rejected in United States v. Bel-Mar Laboratories, Inc., 284 F.Supp. 875 (E.D.N.Y.1968). Judge Mishler's treatment of the constitutional question in that case is thorough and persuasive; we adopt his views. See also United States v. Kendall Co., 234 F.Supp. 628 (D.Mass.1971). The GMP provision is as precise as necessary under the circumstances; it is not unconstitutionally vague.[8] We hold that defendant violated reasonably stable, definite, and ascertainable standards of current good manufacturing practice

designed to insure the production of unadulterated drugs. The judgment of condemnation is

Affirmed.

---

8. Compare the Supreme Court's recent comment in Weinberger v. Hynson, Westcott and Dunning, Inc.:

"But Congress surely has great leeway in setting standards for releasing on the public, drugs which may well be miracles or, on the other hand, merely easy money-making schemes through use of fraudulent articles labelled in mysterious scientific dress. The standard of 'well-controlled investigations' particularized by the Regulations is a

protective measure designed to ferret out those drugs for which there is no affirmative, reliable evidence of effectiveness. The drug manufacturers have full and precise notice of the evidence they must present to sustain their NDAs, and under these circumstances we find the FDA hearing regulations unexceptionable on any statutory or constitutional ground." 412 U.S. 609, 622, 93 S.Ct. 2469, 2479, 37 L.Ed.2d 07 (1973).