**UNDERGRADUATE STUDENT ASSO-
CIATION et al., Plaintiffs,**

v .

**Jack W. PELTASON et al.,
Defendants.**

**No. 71 C 2917.**

United States District Court,
N. D. Illinois, E. D.

Dec. 11, 1973.

See also, 359 F.Supp. 320.

Lawrence Silver, Harrisburg, Pa.,
Stanley J. Adelman, Chicago, Ill., for
plaintiffs.

William L. Perlman, Asst. Atty. Gen.,
Chicago, Ill., for defendants.

Before SWYGERT, Circuit Judge, and
WILL and McLAREN, District Judges.

MEMORANDUM OPINION AND
ORDER

McLAREN, District Judge:

In recent years, college campuses
across the Nation were swept by an un-
precedented wave of student unrest.
Healy v. James, 408 U.S. 169, 171, 92 S.
Ct. 2338, 33 L.Ed.2d 266 (1972). In re-
sponse to increasing violence, Congress
and the legislatures of a majority of the
states enacted measures dealing with
student conduct. Comment, State Legis-
lative Response to Campus Disorder:
An Analytical Compendium, 10 Houston
L.Rev. 930, 932–33 (1973). Plaintiffs,

the Undergraduate Student Association of the University of Illinois at Champaign and individual students at that university, seek declaratory and injunctive relief against one such statute, Ill. Rev.Stat. ch. 122, § 30–17,[1] "Revocation of Scholarship Because of Misconduct." The matter is now before this three-judge court upon plaintiffs' motion for summary judgment declaring that section of the Illinois School Code to be unconstitutional on its face.[2]

Plaintiffs' principal challenge[3] to § 30–17 is on the grounds of vagueness and overbreadth under the First and Fourteenth Amendments to the Constitution. Because of the difficulty in applying these concepts, particularly in the area of student conduct, the Court will first examine their basis and the general standards governing their use.

■ The classic statement of the vagueness doctrine was first made in Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926):

> "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

Because we can never expect our language to possess the precision and certainty of mathematical symbols, Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952), the root of the doctrine has been characterized as simply "a rough idea of fairness." Colten v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). Impermissibly vague laws offend this standard of fairness because they may trap unintentional wrongdoers and encourage arbitrary and erratic enforcement. Grayned v. City of Rockford, supra, 408 U.S. at 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222; Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

■■ Where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, its uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of forbidden conduct were clearly marked and thus operate to inhibit or "chill" the exercise of those freedoms. Grayned v. City of Rockford, supra, 408 U.S. at 109, 92 S.Ct. 2294, 33 L.Ed.2d 222. It is at this point that the doctrines of vagueness and overbreadth become inextricably intertwined. Comment, Aid to Education, Student Unrest, and Cutoff Legislation: An Overview, 119 U.Pa.L.Rev. 1003, 1026 (1971), because the vague law, through its susceptibility to sweeping and improper application in the area of First Amendment rights is overbroad as well. NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). This does not mean that the government cannot legislate in areas touching those rights, but it is required to draft such measures with narrow specificity. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); Keyishian v. Board of Regents, 385 U.S. 589, 604, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). A distinction is drawn, however, between pure speech and speech-related conduct or, as the Supreme Court recently put it, "advocacy" and "action." Healy v. James, supra, 408 U.S. at 192, 92 S.Ct. 2338, 33 L.Ed.2d 266. Although advocacy is entitled to full protection, action may be subjected to reasonable reg-

---

1. In a previous Memorandum Opinion and Order, this Court determined that plaintiffs have standing to seek such relief. Undergraduate Student Ass'n v. Peltason, 359 F. Supp. 320 (N.D.Ill.1973). The determination of whether this cause may be maintained on behalf of various classes alleged in the complaint has been deferred pending the decision of the instant motion.

2. Although the complaint alleges that § 30–17 is unconstitutional as applied, as well as on its face, plaintiffs have not raised this contention in the instant motion.

3. Because of the Court's decision on the issues of vagueness and overbreadth, it is not necessary to reach plaintiffs' argument based upon Police Dept. of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

ulations on time, place, and manner which are necessary and narrowly tailored to further significant governmental interests. Cox v. Louisiana, 379 U.S. 536, 554–555, 85 S.Ct. 453, 13 L.Ed.2d 479 (1965).

█ The protection of constitutional freedoms is nowhere more vital than in the schools. Kleindienst v. Mandell, 408 U.S. 753, 763, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); Shelton v. Tucker, 364 U.S. 479, 487, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). The courts nevertheless seem to have agreed that regulations of student conduct, which clearly touch on the rights of expression, need not be so narrowly drawn as criminal statutes, although there remains a sharp divergence as to the required degree of specificity. Sword v. Fox, 446 F.2d 1091, 1097 (4th Cir.), cert. denied, 404 U.S. 994, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971); Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970); Soglin v. Kaufman, 418 F.2d 163, 168 (7th Cir. 1969); Esteban v. Central Mo. State College, 415 F.2d 1077, 1088 (8th Cir. 1969), cert. denied, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970); see also Healy v. James, *supra,* 408 U.S. at 201–203, 92 S.Ct. 2338, 33 L.Ed.2d 266 (Rehnquist, J., concurring); but see Wright, The Constitution on Campus, 22 Vand.L.Rev. 1027, 1065 (1969). And the Supreme Court has recently emphasized the limited applicability of the overbreadth doctrine to regulations of expressive conduct. Broadrick v. Oklahoma, *supra.* But even considering this apparently more permissive standard, the conclusion that § 30–17 is facially unconstitutional is inescapable.

Section 30–17 punishes the student who "participates in any disorderly disturbance or course of conduct directed against the administration or policies of . . . [the college or university attended] using means which are not protected by the constitution of this State or of the United States . . . ." Both the student and the administrator may legitimately ask: What is a ."disorderly disturbance or course of conduct" and what are the "policies" of the school? What if, in an orderly demonstration, a few create a "disorderly disturbance"? Are the rest in violation? Although the subject matter of the statute obviously demands some flexibility and discretion, the vague terms employed fail to give the student fair notice of the kind of conduct which may cause the revocation of scholarship aid, and fail to provide those charged with enforcing the act with any objective standards.

The Illinois legislature recognized § 30–17's potential for application to speech-related conduct by including the restriction to "means which are not protected by the constitution." For example, one common form of such conduct, on the campus and in the community, is demonstrations in public places. Yet if the state sought to regulate campus demonstrations specifically, it could do so only by reasonable, albeit flexible, standards of time, place, and manner tailored to further its interest in preventing material and substantial disruptions of the work and discipline of its schools. Healy v. James, *supra,* 408 U.S. at 189, 192–193, 92 S.Ct. 2338, 33 L.Ed. 2d 266; Grayned v. City of Rockford, *supra,* 408 U.S. at 115, 92 S.Ct. 2294, 33 L.Ed.2d 222; Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 98, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). But instead of providing such standards, the statute subjects those who participate in expressive conduct to an *ex post facto* determination of the breadth of its prohibitions. The attempted restriction of § 30–17's broad language simply recognizes the boundary of the state's power to regulate, but fails to give students contemplating participation in a demonstration any greater guidance as to what is prohibited; instead, it presents them with a question of constitutional law. Correspondingly, the section, owing to its vagueness, may be enforced at the administrator's peril, for he or she, acting in good faith, may unwittingly punish students for protected conduct.

Although it is normally fair to require that one who goes perilously close to an area of proscribed conduct must accept the risk that he may cross the line, United States v. An Article of Drug Consisting of One Drum of 104,000 Tablets, 484 F.2d 748 (7th Cir. 1973), application of this rule in the area of First Amendment freedoms would chill the exercise of those rights, contrary to constitutional principles. In light of the heavy penalty—deprivation of student financial aid—Rasche v. Board of Trustees, 353 F.Supp. 973, 977 (N.D.Ill.1972); Corporation of Haverford College v. Reeher, 329 F.Supp. 1196, 1207 (E.D.Pa.1971), the deterrent effect of the statute's vague proscriptions upon the exercise of the First Amendment freedoms is clearly real and, judged in relation to its legitimate sweep, substantial. Nor does it appear that this could be cured through case-by-case analysis. Broadrick v. Oklahoma, *supra*, 413 U.S. at 616, 93 S. Ct. at 2918. The Court therefore concludes that § 30–17 is invalid on its face.

In apparent recognition of the insufficiency of the language of the act itself, defendants devote most of their argument to the proposition that § 30–17 should be construed with and viewed as narrowed by the "Disruptive Action Statement" adopted by the board of trustees of the University of Illinois in 1970. They contend that such a construction is dictated by the fact that the statement was adopted in response to the "Decorum on Campus" Act, Ill.Rev. Stat. ch. 144, §§ 225–226 which became effective on the same date as § 30–17. The Disruptive Action Statement, although it provides reasonably clear standards of student conduct, makes no reference to the sanction of scholarship revocation. In fact, nothing in the statement shows that it was even adopted in response to the Decorum on Campus Act which defendants urge is in *pari materia* with § 30–17. Even assuming that the statement was made in response to the Decorum Act, the difference in coverage between that act

(state-supported institutions of higher learning) and § 30–17 (both private and state-supported colleges and universities) militates against the construction contended for by defendants. Even if it was the intention of the state through the Decorum Act, and the board of trustees through its statement, to narrow § 30–17 (which appears to be extremely doubtful), it does not appear that students of common intelligence could have realized it. *Cf.* Gregory v. City of Chicago, 394 U.S. 111, 121, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969) (Black & Douglas, JJ., concurring). In short, the Court is convinced that the statute's vagueness and overbreadth are not cured by reference to the Disruptive Action Statement of the University of Illinois.

The Court having concluded that § 30–17 is unconstitutional on its face and there being no genuine issues of material fact remaining on that question, summary judgment will be entered for plaintiffs declaring that statute to be unconstitutional.

It is so ordered.

