**NATIONAL ASSOCIATION OF PHARMACEUTICAL MANUFACTURERS and National Pharmaceutical Alliance, Plaintiffs,**

v.

**FOOD AND DRUG ADMINISTRATION, Defendant.**

**79 Civ. 4450 (LFM).**

United States District Court, S. D. New York.

March 18, 1980.

Bass, Ullman & Lustigman by Milton A. Bass, Jacob Laufer and Joan Licht Mantel, New York City, for plaintiffs.

Robert M. Fiske, Jr., U. S. Atty., S.D.N.Y. by Harvey J. Wolkoff, Asst. U. S. Atty., New York City, Kathleen A. Blackburn, Asst. Chief Counsel for Enforcement by Eugene M. Pfeifer, Food & Drug Administration, Dept. of Health, Education & Welfare, Rockville, Md., for defendant.

## MEMORANDUM

MacMAHON, Chief Judge.

Defendant Food and Drug Administration ("FDA") moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

In September 1978, following notice-and-comment procedures, the FDA promulgated "current good manufacturing practice" ("CGMP") regulations [1] applicable to certain "adulterated" drugs under the Food, Drug and Cosmetic Act. [2] Seeking to avoid a case-by-case adjudication of the propriety of each manufacturer's practices, the FDA stated at the time the CGMP regulations were promulgated that they had the full force and effect of law, relying on 21 U.S.C. § 371(a) for authority to do so. [3] Plaintiffs in this action, representing groups of drug manufacturers, seek declaratory relief holding that the CGMP regulations are merely "interpretive" and unenforceable without further proceedings.

■ Beyond question the FDA does have authority to promulgate regulations pursuant to 21 U.S.C. § 371(a) which are binding as law. *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973); *National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688 (2d Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 445 (1975). As recognized by our Court of Appeals in *National Nutritional Foods Ass'n, supra,* such broad rulemaking authority is necessary "to avoid the endless delays that have tended to paralyze adjudicatory hearings and render them ineffective as a means of utilizing agency expertise." [4]

■ We reject plaintiffs' assertion that the line of cases exemplified by *National Nutritional Foods* has been overruled by the Supreme Court's decision in *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), which dealt only with the effect of regulations promulgated under the Freedom of Information Act. [5] "CGMP" regulations promulgated by the FDA easily satisfy the requirement of *Chrysler* that there be a "nexus between the regulations and some delegation of the requisite legislative authority." [6] Nor, clearly, is the law relied upon by the FDA as authority to issue binding regulations a mere "housekeeping statute" found insufficient by the Supreme Court in *Chrysler* to support an agency's substantive rulemaking power. [7]

■ Plaintiffs next maintain that the legislative history of the CGMP statute [8] demonstrates a Congressional intent that whatever substantive rulemaking power the FDA may possess regarding other matters, it does not extend to the regulation of current good manufacturing practices.

The first version of the CGMP statute presented to the Senate Judiciary Commit-

---

**1.** 21 C.F.R. § 210.3 *et seq.*

**2.** 21 U.S.C. § 351.

**3.** 21 U.S.C. § 371(a) provides: "The authority to promulgate regulations for the efficient enforcement of this chapter, except as otherwise provided in this section, is vested in the Secretary."

**4.** 512 F.2d at 697–98.

**5.** 5 U.S.C. § 552 *et seq.*

**6.** 441 U.S. at 304, 99 S.Ct. at 1719.

**7.** 441 U.S. at 310, 99 S.Ct. at 1722.

**8.** 21 U.S.C. § 351(a)(2)(B).

tee in 1962 would have limited the effect of FDA regulations as only *prima facie* evidence of whether a drug conformed to the statutory requirement.[9] In an attempt to obviate the need for "endless *de novo* litigation of what constitutes good manufacturing practice each time there is an enforcement action," President Kennedy proposed an amendment which would have required formal rulemaking procedures resulting in legally binding regulations.[10] The final version of the bill as passed by Congress eliminated both the *prima facie* limitation and the necessity for formal rulemaking procedures. The report of the Judiciary Committee accompanying the bill provides:

"The committee acceded to the President's request for elimination of the '*prima facie*' regulatory authority in the bill. It felt, however, on balance, that there was no need for inserting provisions for regulations through formal rulemaking on the subject of what is good manufacturing practice. Section 701(a) (21 U.S.C. § 371(a)) now vests in the Secretary 'authority to promulgate regulations for the efficient enforcement of this Act.' This permits the Department to issue such regulations as it desires and their scope and effect will be the same as that of other regulations issued under such general authority."[11]

Plaintiffs' attempt to show that the CGMP regulations are not binding is based on the Judiciary Committee's *first* report applicable only to the original version of the statute which failed to gain passage.[12] Such authority can hardly be as reliable in determining the true intent of Congress as the Senate Report issued in support of the legislation as it was finally enacted. *Zuber v. Allen,* 396 U.S. 168, 186, 90 S.Ct. 314, 324, 24 L.Ed.2d 345 (1969); *National Nutritional Foods Ass'n, supra,* 512 F.2d at 699.

The final Senate Report quoted above might, without more, persuade us that Congress intended to vest the FDA with authority to promulgate binding CGMP regulations. Any remaining uncertainty, however, is dispelled by *Weinberger v. Hynson et al., supra,* in which the United States Supreme Court held that whether there was "substantial evidence" respecting the efficacy of a drug could be determined by reference to regulations promulgated pursuant to § 371(a). If the FDA can make binding regulations as to whether a drug is effective, surely it can do so with regard to good manufacturing practices of the drug industry.

We do not feel constrained by the apparently contrary finding as to the effect of CGMP regulations reached in two cases relied upon by plaintiffs, *United States v. An Article of Drug Labeled White Quadrisect,* 484 F.2d 748 (7th Cir. 1973) and *United States v. Bel-Mar Laboratories, Inc.,* 284 F.Supp. 875 (E.D.N.Y.1968). The issue before the court in both cases was the constitutionality of the CGMP statute, not the effect of regulations under the statute. The allusions made in each case to the regulations as being "interpretive" are thus merely *dicta.* Moreover, both courts appear to have relied, wrongly we believe, on the first Senate Report rather than the final one accompanying the bill as it was finally enacted.[13]

Plaintiffs next assert that the CGMP regulations themselves are arbitrary, capricious and contrary to law. They contend that they may be entitled to relief on this ground alone, even if the court finds the regulations substantive in nature. The complaint, however, addresses only the FDA's authority to promulgate binding regulations, and raises no issue as to their substance. The charge that the CGMP reg-

9. Senate Report No. 1744, 87th Cong., 2d Sess., reprinted at 1962 U.S. Code Cong. & Admin. News, p. 2884 *et seq.*

10. 108 Cong.Rec. 15695 (August 6, 1962).

11. Senate Report No. 1744, 87th Cong., 2d Sess., Part 2, p. 3 (1962).

12. *Supra* n. 8.

13. *U.S. v. An Article of Drug Labeled White Quadrisect, supra,* 484 F.2d at 749, n. 2; *U.S. v. Bel-Mar Laboratories, Inc., supra,* 284 F.Supp. at 883, n. 18.

ulations are arbitrary and capricious therefore cannot avail plaintiffs on the instant motion under Rule 12(b)(6).

 In sum, we believe that a binding definition of good manufacturing practices is just the sort of regulatory area best left to the expertise of the FDA under *Weinberger v. Hynson et al.* Court review at this stage would only preclude the FDA from performing its legislative mandate effectively due to the delays inherent in piecemeal consideration of each manufacturer's practices.

Because we find that the FDA is authorized by 21 U.S.C. §§ 351(a)(2)(B) and 371(a) to promulgate binding regulations as to what constitutes "current good manufacturing practices," we hold that as a matter of law plaintiffs are not entitled to relief in this action.

Accordingly, defendant's motion to dismiss the complaint is granted.

So ordered.