# BOYCE MOTOR LINES, INC. v. UNITED STATES.

No. 167.   Argued December 4, 1951.—Decided January 28, 1952.

*Archie O. Dawson* argued the cause for petitioner. With him on the brief were *Joseph C. Glavin* and *A. Harry Moore.*

*Robert W. Ginnane* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney* and *Beatrice Rosenberg.*

*Leander I. Shelley* and *Russell F. Watson* filed a brief for the Port of New York Authority, as *amicus curiae,* supporting the United States.

MR. JUSTICE CLARK delivered the opinion of the Court.

The petitioner is charged with the violation of a regulation promulgated by the Interstate Commerce Commission under 18 U. S. C. § 835.[1]  The Regulation provides:

> "Drivers of motor vehicles transporting any explosive, inflammable liquid, inflammable compressed

---

[1] 18 U. S. C. § 835:

"The Interstate Commerce Commission shall formulate regulations for the safe transportation within the limits of the jurisdiction of the United States of explosives and other dangerous articles, including flammable liquids, flammable solids, oxidizing materials, corrosive liquids, compressed gases, and poisonous substances, which shall be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives or other dangerous articles by land, and upon all shippers making shipments of explosives or other dangerous articles via any common carrier engaged in interstate or foreign commerce by land or water.

"Such regulations shall be in accord with the best-known practicable means for securing safety in transit, covering the packing, marking, loading, handling while in transit, and the precautions necessary to determine whether the material when offered is in proper condition to transport."

gas, or poisonous gas shall avoid, so far as practicable, and, where feasible, by prearrangement of routes, driving into or through congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts, and dangerous crossings." [2]

The statute directs that "[w]hoever knowingly violates" the Regulation shall be subject to fine or imprisonment or both.[3]

The indictment, in counts 1, 3, and 5, charges that petitioner on three separate occasions sent one of its trucks carrying carbon bisulphide, a dangerous and inflammable liquid, through the Holland Tunnel, a congested thoroughfare. In each instance, the truck was en route from Cascade Mills, New York, to Brooklyn, New York. On the third of these trips the load of carbon bisulphide exploded in the tunnel and about sixty persons were injured. The indictment further states that "there were other available and more practicable routes for the transportation of said shipment, and . . . the [petitioner] well knew that the transportation of the shipment of carbon bisulphide . . . into the . . . Holland Tunnel was in violation of the regulations promulgated . . . by the Interstate Commerce Commission . . . ." [4] There is no allegation as to the feasibility of prearrangement of routes, and petitioner is not charged with any omission in that respect..

The District Court dismissed those counts of the indictment which were based upon the Regulation in ques-

---

[2] 49 CFR § 197.1 (b).

[3] "Whoever knowingly violates any such regulation shall be fined not more than $1,000 or imprisoned not more than one year, or both; and, if the death or bodily injury of any person results from such violation, shall be fined not more than $10,000 or imprisoned not more than ten years, or both." 18 U. S. C. § 835 (sixth paragraph).

[4] R. 2.

tion, holding it to be invalid on the ground that the words "so far as practicable, and, where feasible" are "so vague and indefinite as to make the standard of guilt conjectural." 90 F. Supp. 996, 998. The Court of Appeals for the Third Circuit reversed, holding that the Regulation, interpreted in conjunction with the statute, establishes a reasonably certain standard of conduct. 188 F. 2d 889. We granted certiorari. 342 U. S. 846.

A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation.[5] But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.[6]

In *Sproles v. Binford,* 286 U. S. 374 (1932), these principles were applied in upholding words in a criminal statute similar to those now before us. Chief Justice Hughes, speaking for a unanimous court, there said:

" 'Shortest practicable route' is not an expression too vague to be understood. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understand-

---

[5] *Lanzetta* v. *New Jersey,* 306 U. S. 451 (1939).

[6] *Nash* v. *United States,* 229 U. S. 373, 377 (1913); *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 502–503 (1925); *United States* v. *Petrillo,* 332 U. S. 1, 7–8 (1947).

ing. . . . The use of common experience as a glossary is necessary to meet the practical demands of legislation." [7]

The Regulation challenged here is the product of a long history of regulation of the transportation of explosives and inflammables. Congress recognized the need for protecting the public against the hazards involved in transporting explosives as early as 1866.[8] The inadequacy of the legislation then enacted led to the passage, in 1908, of the Transportation of Explosives Act,[9] which was later extended to cover inflammables.[10] In accordance with that Act, the Commission in the same year issued regulations applicable to railroads. In 1934 the Commission exercised its authority under the Act to promulgate regulations governing motor trucks, including the Regulation here in question.[11] In 1940 this Regulation was amended to substantially its present terminology.[12] That terminology was adopted only after more than three years of study and a number of drafts. The trucking industry

---

[7] *Sproles* v. *Binford,* 286 U. S. 374, 393 (1932). The provision which was there challenged and upheld was concerned basically with a requirement as to distance, a requirement applying within necessary limits of practicability, just as the Regulation here challenged is concerned basically with avoidance of designated points of danger, within like limits of practicability.

[8] 14 Stat. 81.

[9] 35 Stat. 554, as amended, 35 Stat. 1134.

[10] 41 Stat. 1444.

[11] 49 CFR, 1938, § 85.34 (b); see *Regulations for Transportation of Explosives,* 211 I. C. C. 351, 354 (1935).

[12] 49 CFR, 1940 Supp., § 197–7.3082: "Drivers of motor vehicles transporting inflammable liquids shall avoid, so far as practicable, driving into or through congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts and dangerous crossings. So far as practicable, this shall be accomplished by pre-arrangement of routes." The section was amended to its present form in 1942. 7 Fed. Reg. 2869.

participated extensively in this process, making suggestions relating to drafts submitted to carriers and their organizations, and taking part in several hearings. The Regulation's history indicates the careful consideration which was given to the difficulties involved in framing a regulation which would deal practically with this aspect of the problem presented by the necessary transportation of dangerous explosives on the highways.[13]

The statute punishes only those who knowingly violate the Regulation. This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid.[14] That is evident from a consideration of the effect of the requirement in this case. To sustain a conviction, the Government not only must prove that petitioner could have taken another route which was both commercially practicable and appreciably safer (in its avoidance of crowded thoroughfares, etc.) than the one it did follow. It must also be shown that petitioner knew that there was such a practicable, safer route and yet deliberately took the more dangerous route through the tunnel, or that petitioner willfully neglected to exercise its duty under the Regulation to inquire into the availability of such an alternative route.[15]

---

[13] Compare *United States* v. *Petrillo*, 332 U. S. 1, 7 (1947); *Miller* v. *Strahl*, 239 U. S. 426, 434 (1915); *Baltimore & Ohio R. Co.* v. *Interstate Commerce Comm'n*, 221 U. S. 612, 620 (1911).

[14] *Screws* v. *United States*, 325 U. S. 91, 101–103 (1945); *United States* v. *Ragen*, 314 U. S. 513, 524 (1942); *Gorin* v. *United States*, 312 U. S. 19, 27–28 (1941); *Omaechevarria* v. *Idaho*, 246 U. S. 343, 348 (1918).

[15] The officers, agents, and employees of every motor carrier concerned with the transportation of explosives and other dangerous articles are required to "become conversant" with this and other regulations applying to such transportation. 49 CFR § 197.02.

In an effort to give point to its argument, petitioner asserts that there was no practicable route its trucks might have followed which did not pass through places they were required to avoid. If it is true that in the congestion surrounding the lower Hudson there was no practicable way of crossing the River which would have avoided such points of danger to a substantially greater extent than the route taken, then petitioner has not violated the Regulation. But that is plainly a matter for proof at the trial. We are not so conversant with all the routes in that area that we may, with no facts in the record before us, assume the allegations of the indictment to be false.[16] We will not thus distort the judicial notice concept to strike down a regulation adopted only after much consultation with those affected and penalizing only those who knowingly violate its prohibition.

We therefore affirm the judgment of the Court of Appeals remanding the cause to the District Court with directions to reinstate counts 1, 3, and 5 of the indictment.

*Affirmed.*

MR. JUSTICE JACKSON, with whom MR. JUSTICE BLACK and MR. JUSTICE FRANKFURTER join, dissenting.

Congress apparently found the comprehensive regulation needed for the transportation of explosives and inflammables too intricate and detailed for its own processes. It delegated the task of framing regulations to the Interstate Commerce Commission and made a knowing violation of them criminal. Where the federal crime-making power is delegated to such a body, we are

---

[16] This case is here to review the granting of a motion to dismiss the indictment. It should not be necessary to mention the familiar rule that, at this stage of the case, the allegations of the indictment must be taken as true.

justified in requiring considerable precision in its exercise. *Kraus & Bros.* v. *United States,* 327 U. S. 614, 621–622.

This regulation does not prohibit carriage of explosives. It presupposes that they must be transported, and, therefore, attempts to lay down a rule for choice of routings. Petitioner was admonished to avoid congested thoroughfares, places where crowds are assembled, streetcar tracks, tunnels, viaducts and dangerous crossings. Nobody suggests that it was possible to avoid all of these in carrying this shipment from its origin to its destination. Nor does the regulation require that all or any one of them be avoided except "so far as practicable." I do not disagree with the opinion of Chief Justice Hughes and the Court in *Sproles* v. *Binford,* 286 U. S. 374, that, in the context in which it was used, " 'shortest practicable route' is not an expression too vague to be understood." A basic standard was prescribed with definiteness—distance. That ordinarily was to prevail, and, if departed from, the trucker was to be prepared to offer practical justifications.

But the regulation before us contains no such definite standard from which one can start in the calculation of his duty. It leaves all routes equally open and all equally closed. The carrier must choose what is "practicable," not, as in the *Sproles* case, by weighing distance against obstacles to passage. We may, of course, take judicial notice of geography. Delivery of these goods was impossible except by passing through many congested thoroughfares and either tunnels, viaducts or bridges. An explosion would have been equally dangerous and equally incriminating in any of them. What guidance can be gleaned from this regulation as to how one could with reasonable certainty make a choice of routes that would comply with its requirements?

It is said, however, that definiteness may be achieved on the trial because expert testimony will advise the jury as to what routes are preferable. Defects in that solution

are twofold: first, there is no standard by which to direct, confine and test the expert opinion testimony and, second, none to guide a jury in choosing between conflicting expert opinions.

It is further suggested that a defendant is protected against indefiniteness because conviction is authorized only for knowing violations. The argument seems to be that the jury can find that defendant knowingly violated the regulation only if it finds that it knew the meaning of the regulation he was accused of violating. With the exception of *Screws* v. *United States,* 325 U. S. 91, which rests on a very particularized basis, the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law. I do not suppose the Court intends to suggest that if petitioner knew nothing of the existence of such a regulation its ignorance would constitute a defense.

This regulation prescribes no duty in terms of a degree of care that must be exercised in moving the shipment. The utmost care would not protect defendant from prosecution under it. One can learn his duty from such terms as "reasonable care" or "high degree of care." Of course, one may not be sure whether a trier of fact will find particular conduct to measure up to the requirements of the law, but he may learn at least what he must strive for, and that is more than he can learn from this regulation.

This question is before this Court on the indictment only. In some circumstances we might feel it better that a case should proceed to trial and our decision be reserved until a review of the conviction, if one results. But a trial can give us no better information than we have now as to whether this regulation contains sufficiently definite standards and definition of the crime. An acquittal or disagreement would leave this unworkable, indefinite regulation standing as the only guide in a matter that badly needs intelligible and rather tight regulation. It

would remain, at least to some extent, as an incoherent barrier against state enactment or enforcement of local regulations of the same subject. Would it not be in the public interest as well as in the interest of justice to this petitioner to pronounce this vague regulation invalid, so that those who are responsible for the supervision of this dangerous traffic can go about the business of framing a regulation that will specify intelligible standards of conduct?