**WATSON BROS. TRANSPORTATION CO., Inc., a corporation, Plaintiff,**

v.

**The CITY OF OMAHA, NEBRASKA, a municipal corporation of the Metropolitan class, et al., Defendants.**

**UNION TRANSFER CO., a corporation, Plaintiff,**

v.

**The CITY OF OMAHA, NEBRASKA, a municipal corporation of the Metropolitan class, et al., Defendants.**

**Civ. Nos. 113–53, 114–53.**

United States District Court
D. Nebraska, Omaha Division.
June 14, 1955.

Ben F. Kaslow, Seymour Smith and Robert Smith, Joseph T. Votava, Omaha, Neb., for plaintiffs.

Edward F. Fogarty, City Atty., and Bernard E. Vinardi and Neal H. Hilmes, Asst. City Attys., Omaha, Neb., for defendants.

DONOHOE, Chief Judge.

These actions were instituted by plaintiffs, interstate motor carriers, to enjoin the enforcement of a Resolution passed by the City Council of Omaha, Nebraska, prohibiting the transportation of munitions by motor carriers on the streets of the City of Omaha. Since the amount in controversy in each case exceeds $3,000, exclusive of interests and costs, and the case presents a substantial federal question, this court has jurisdiction. 28 U.S.C. (1952 Ed.) § 1331; Hill v. State of Florida ex rel. Watson, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782; Minor v. City of Keokuk, D.C. Iowa, 1950, 92 F.Supp. 833. See also 28 U.S.C. (1952 Ed.) § 1337.

After careful consideration of the material and competent evidence presented at the trial, the court makes the following special

### Findings of Fact

The plaintiffs, Union Transfer Co. and Watson Bros. Transportation Co., Inc., are corporations duly organized and existing under the laws of Nebraska with their principal place of business at Omaha, Nebraska. At the time of filing this suit and at all times since then the plaintiffs have been engaged as common carriers in the transportation of general commodities including explosives in interstate commerce. Plaintiffs operate pursuant to Certificates of Public Convenience and Necessity issued by the Interstate Commerce Commission.

By its Certificate of Convenience and Necessity the Union Transfer Co. is authorized and required to transport explosives on certain designated routes between the following places, among others:

>Omaha, Nebraska, and Chicago, Illinois.
>
>Omaha, Nebraska, and Winnebago, Nebraska.
>
>Omaha, Nebraska, and Denver, Colorado.
>
>Omaha, Nebraska, and Grand Island, Nebraska.
>
>Omaha, Nebraska, and Salina, Kansas.

By its Certificate of Convenience and Necessity Watson Bros. Transportation Co., Inc., is authorized and required to transport explosives on certain designated routes between the following places, among others:

>Omaha, Nebraska, and Kansas City, Missouri.
>
>Omaha, Nebraska, and Lincoln, Nebraska.
>
>Omaha, Nebraska, and Des Moines, Iowa.
>
>Omaha, Nebraska, and Chicago, Illinois.
>
>Omaha, Nebraska, and Sabetha, Kansas.
>
>Omaha, Nebraska, and Denver, Colorado.

By the terms of their Certificates of Convenience and Necessity plaintiffs are required to "render reasonably continuous and adequate service to the public in pursuance of the authority granted." In rendering reasonably continuous and adequate service plaintiffs are required to, and do, transport explosives across the Missouri River, at, or near, Omaha, Nebraska, a terminal point for many of its routes.

The City of Omaha extends along the west bank of the Missouri River for a distance of about twelve miles. There are three highway bridges over the Missouri River contiguous to Omaha available for motor carrier transportation; however, it is impossible to use any one of these bridges without traveling within the corporate limits of the city; and there are no other highway bridges available for such transportation over said river within 100 miles of the City of Omaha that are accessible for such use without traveling through a municipality having a population of over 3,000 inhabitants. It is not feasible for the plaintiffs to render continuous and adequate service in the transportation of explosives pursuant to their Certificates of Convenience and Necessity without transporting such explosives on the streets of the City of Omaha.

The City of Omaha is a municipal corporation, organized and existing under and by virtue of the Constitution and Laws of the State of Nebraska. On the 20th day of October, 1953, the City of Omaha, through its Council, passed the following resolution:

>"City of Omaha
>"Council Chamber
>Omaha, Nebr., October 13, 1953
>
>"Resolved Whereas, the City Council has authority under Section 14–102, R. S. Nebraska 1943, to prohibit the transportation of explosives on the streets of the City of Omaha, and
>
>"Whereas, pursuant to Section 18–6.5 of the Omaha Municipal Code, the Bureau of Fire Prevention has recommended that the transportation of explosives by motor vehicles on the streets of the City of Omaha be prohibited.
>
>"Now, Therefore, Be It Resolved by the City Council of the City of Omaha:
>
>"That after 12:00 o'clock Noon October 21, 1953, the transportation of explosives by motor vehicle on the streets of the City of Omaha is hereby prohibited, subject to the exceptions hereinafter recited.
>
>"The term explosives is defined as follows: Any chemical compound or any mechanical mixture containing

any oxidizing and combustible units or other ingredients in such proportions, quantities or packing that an ignition by fire, friction, concussion, percussion or detonator of any part of the compound or mixture may cause sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects upon life, limb or contiguous objects, but does not mean gasoline, kerosene, naptha, turpentine, benzine, butane, propanecolloid nitrocellulose in sheets or rods or grains not under one-eighth of an inch in diameter, wet nitrocellulose and wet nitro starch containing twenty per centum or more moisture or wet picric acid containing or being in ten per centum or more moisture. Manufactured articles such as fixed ammunition for small arms, fire crackers, safety fuse, and matches, shall not be held to be explosives when the individual units contain explosives in such limited quantity, of such nature or in such packing that it is impossible to produce a simultaneous or a destructive explosion of such units, to the injury of life, limb or property.

"This regulation shall not apply to any shipment of explosives consigned to any agency of the State of Nebraska or of the United States of America located in the City of Omaha or to any motor vehicle belonging to the Defense Department of the United States of America or the National Guard of any State.

"By Wm. Dean Noyes—Harold P. Caldwell

"Adopted Oct. 20, 1953

"/s/ Glenn Cunningham

"Mayor and President City Council.

"Attest: /s/ M J Dineen Jr

"City Clerk."

The plaintiffs have made a diligent search for a practicable route to be used in the transportation of explosives that would bypass the City of Omaha. No such practicable route is available. It would not be economically possible for plaintiffs to route their trucks across bridges either to the north or to the south of Omaha and still render reasonable and adequate service to the points they are now authorized to serve; and in any event plaintiffs could not avoid the hazards of congested areas by routing their trucks across bridges north or south of Omaha because all the bridges within 100 miles of Omaha are adjacent to, and accessible only by passing through, municipalities exceeding 3,000 inhabitants.

### Discussion

This case seems to come within the purview of Castle v. Hayes Freight Lines, 348 U.S. 61, 75 S.Ct. 191, 192, in which it was held that where an interstate motor carrier holds a Certificate of Convenience and Necessity under the Federal Motor Carrier Act, a state may not suspend the carrier's right to use the State's highways in its interstate operations, as punishment for repeated violations of a state law regulating the weight of loads of freight that may be carried on the State's highways. In the court's opinion Justice Black points out:

"Congress in the Motor Carrier Act adopted a comprehensive plan for regulating the carriage of goods by motor truck in interstate commerce. The federal plan of control was so all-embracing that former power of states over interstate motor carriers was greatly reduced. No power at all was left in states to determine what carriers could or could not operate in interstate commerce. Exclusive power of the Federal Government to make this determination is shown by § 306 of 49 U.S.C., 49 U.S.C.A. § 306 which describes the conditions under which the Interstate Commerce Commission can issue certificates of convenience and necessity. And § 312 of the same title provides that all certificates, permits or licenses is-

sued by the Commission 'shall remain in effect until suspended or terminated as herein provided.' But in order to provide stability for operating rights of carriers, Congress placed within very narrow limits the Commission's power to suspend or revoke an outstanding certificate. No certificate is to be revoked, suspended or changed until after a hearing and a finding that a carrier has willfully failed to comply with the provisions of the Motor Carrier Act or with regulations properly promulgated under it. Under these circumstances, it would be odd if a state could take action amounting to a suspension or revocation of an interstate carrier's commission-granted right to operate. Cf. Hill v. State of Florida [ex rel. Matson], 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782. It cannot be doubted that suspension of this common carrier's right to use Illinois highways is the equivalent of a partial suspension of its federally granted certificate. The highways of Illinois are not only used by Hayes to transport interstate goods to and from that State but are also used as connecting links to points in other states which the Commission has authorized Hayes to serve. Consequently if the ninety-day or the one-year suspension should become effective, the carriage of interstate goods into Illinois and other states would be seriously disrupted."

■ The court is inclined to the view that the City Resolution involved in this case which prohibits motor carriers from using city streets for the interstate transportation of explosives is "the equivalent of a partial suspension of (plaintiffs') federally granted certificates" and should be enjoined.

■ It is true that the Regulations of the Interstate Commerce Commission were not intended to preclude states or cities from establishing or enforcing local laws relating to safety where compliance with the local law would not frustrate compliance with the federal laws and regulations. Cf. 49 C.F.R. (Supp.) 190.30. However, in the present case the local law and federal regulations are incompatible.

■ The Interstate Commerce Commission has issued the following regulations relating to the transportation of explosives through cities:

"Motor vehicles transporting explosives and other dangerous articles shall be so driven as to avoid, *so far as practicable,* and, *where feasible,* by prearrangement of routes, congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts and dangerous crossings." 49 C.F. R. (Supp.) 197.1(d).

In the foregoing regulation, as in other regulations relating to deviation from regular routes for the purpose of avoiding congested areas (See 49 C.F.R.Supp., 211.8) the deviation is required only "so far as practicable" and "where feasible." This means that plaintiffs were required to by-pass the City of Omaha only if it were "commercially practicable and appreciably safer (in their avoidance of crowded thoroughfares)" to do so. Boyce Motor Lines v. United States, 342 U.S. 337, 342, 72 S.Ct. 329, 332, 96 L.Ed. 367. The facts in this case indicate that bypassing the city and its contiguous bridges is neither commercially practicable nor appreciably safer. If the blanket prohibition of the Resolution were given effect plaintiffs would not be able to furnish reasonable and adequate service at all points they are now authorized to serve as required by the Federal Motor Carrier Act.

For the reasons stated a permanent injunction should issue. Counsel for plaintiffs shall prepare and submit for approval the appropriate order to be entered in accordance with this memorandum.