888

UNITED STATES of America,
Plaintiff,

v.

KEY LINE FREIGHT, INC.,
Defendant.

No. G74–122 Cr.

United States District Court,
W. D. Michigan, S. D.

Oct. 8, 1975.

Robert C. Greene, Asst. U. S. Atty., Grand Rapids, Mich., for plaintiff.

Robert A. Sullivan, Northville, Mich., for defendant.

## OPINION

FOX, Chief Judge.

Defendant Key Line Freight, Inc. has been charged in a 28-Count Information with giving rebates to shippers in violation of 49 U.S.C. Section 322(c) which provides:

"Any person, whether carrier, shipper, consignee, or broker, or any officer, employee, agent, or representative thereof, who shall knowingly offer, grant, or give, or solicit, accept, or receive any rebate . . . or by any other means or device, shall knowingly and willfully assist, suffer or permit any person or persons, natural or artificial, to obtain transportation of passengers or property subject to this chapter for less than the applicable rate, fare, or charge . . . shall be deemed guilty of a misdemeanor and upon conviction thereof be fined not less than $200 nor more than $500 for the first offense . . . ."

The information alleges in each count that the defendant carrier furnished an employee of a particular shipper an expense-paid trip to the Kentucky Derby on May 6, 1972. The alleged rebate, being the value of the expense-paid trip, varied in each count from $148.90 to $448.60. Each count alleges that these amounts were rebates on a particular shipment made at some time after May 6, 1972. The scheduled tariff charge for each of said shipments is set forth in each count and varies in amount from $8.65 to $419.47.

Count One is fairly representative of the 28 counts:

"On or about May 6, 1972, in the Western District of Michigan Key Line Freight, Inc., defendant, a motor carrier of property subject to Part II of the Interstate Commerce Act (Title 49, Chapter 8, U.S.Code) did, in violation of 49 U.S.Code 322(c), knowingly and unlawfully offer, grant and give a rebate to SpeeDee Check Out Systems, Inc., a shipper, in that said defendant furnished George J. Glupker, Jr., an employee of said shipper, with a valuable consideration in the amount of $148.90 through the device of an expense paid trip to the Kentucky Derby. This constitutes a rebate and offset against the lawful freight charge of $232.73 specified in the tariff of the defendant on file with the Interstate Commerce Commission. This freight charge was collected by the defendant from SpeeDee Check Out Systems, Inc., on or about May 18, 1972, for the transportation of crates counters N.O. I. performed by the defendant on or about May 18, 1972, by motor vehicle over the public highways from Grand Rapids, Michigan, to Bellvue, Nebraska."

The defendant's motion to dismiss the information is based upon the following grounds: (1) that the allegations do not constitute a violation of the statute since bare and unrelated entertainment without a causal connection to tariff charges or traffic tendered does not amount to ·a rebate, (2) that the constitutional rights of the defendant are violated in that the information requires a broadening of the term "rebate" which is improper, and (3) that the statute and administrative interpretations are vague and fail constitutionally.

Both the government and the defendant have made reference to prior Interstate Commerce Commission rulings and particular reference is made to the Commission's "Administrative Interpretations—Statement of Policy" 49 C.F.R. 1004.2 which under paragraph (f)(3) provides:

> "Gifts of services or articles of substantial value to particular shippers or their representatives are considered violations of the law. For example, transportation of shipper representatives in carrier-owned aircraft or automobiles to resorts for recreational weekends or similar excursions are so regarded . . . ."

The briefs submitted on both sides have resolved that this statement of policy represents the Commission's interpretation that a particular form of conduct is in violation of the statute. At most, the interpretation gives notice to carriers and shippers that the Commission considers certain acts unlawful and will take enforcement action as deemed appropriate. It is clear that the information charges violation of 49 U.S.C. 322(c) without reference to administrative rulings or regulations. For the purposes of this motion and the construction of 49 U.S.C. 322(c), the primary authority remains the substantive case law.

In the area of rebates there are few cases to look to with regard to Section 322(c). However, a similar statute has been enacted under 49 U.S.C. § 41 dealing with the regulation of railroads. This act is commonly referred to as the Elkins Act. The cases interpreting rebates are more abundant with respect to the Elkins Act and are relied on by both sides in their briefs.

## I.

## WHETHER THE INFORMATION SUFFICIENTLY ALLEGES AN OFFENSE UNDER 49 U.S.C. SECTION 322(c)

The defendant contends that the information is insufficient in that it alleges bare and unrelated entertainment without an alleged causal connection to tariff charges or traffic tendered. The defendant maintains that in every case dealing with a rebate, there has been a connection between the unlawful device and the movement of traffic and the charges therefor. The defendant argues that when there is no direct benefit to the shipper, there must be an alleged causal relation between the act and tariff charge or the subsequent movement of traffic.

No case can be found which speaks directly to this issue. Besides the obvious situation where a carrier makes a cash payment back to the shipper, courts have determined such things as loans at insufficient interest, services such as warehousing at a reduced cost, extension of credit, and commissions as rebate devices and unlawful under the statutes.

The Supreme Court in *United States v. Braverman,* 373 U.S. 405, 83 S.Ct. 1370, 10 L.Ed.2d 444 (1963), ·held that the rebate need not be for the benefit of the shipper. In that case, the defendant was the transportation manager of a shipper who was charged with unlawfully soliciting rebates from a freight forwarder. The indictment had been dismissed at the trial court for failure to allege that the rebate was for the benefit of the shipper. The Court reversed holding that the Elkins Act

outlaws solicitations of rebates by any person whatever, no matter for whose benefit the rebate is sought. The Court further stated that Congress intended to prevent any kind of departure from the published rates and that to that end it outlawed all rebates.

The cases hold that the Elkins Act was to prevent any and all means that might be resorted to to obtain or receive concessions and rebates from the published tariffs. *Armour Packing Co. v. United States,* 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1907); *Vandalia R. Co. v. United States,* 226 F. 713 (7th Cir 1915); *Northern Central Ry. Co. v. United States,* 241 F. 25 (2nd Cir. 1917).

The Court in *Armour Packing Co. v. United States,* 209 U.S. 56, 72, 28 S.Ct. 428, 431, stated:

" 'The all-embracing prohibition against either directly or indirectly charging less than the published rates shows that the purpose of the statute was to make the prohibition applicable to every method of dealing by a carrier by which the forbidden result could be brought about. If the public purpose which the statute was intended to accomplish be borne in mind, its meaning becomes, if possible, clearer.'

"The Elkins act proceeded upon broad lines and was evidently intended to effectuate the purpose of Congress to require that all shippers should be treated alike, and that the only rate charged to any shipper for the same service, under the same conditions, should be the one established, published, and posted as required by law. It is not so much the particular form by which or the motive for which this purpose was accomplished, but the intention was to prohibit any and all means that might be resorted to to obtain or receive concessions and rebates from the fixed rates, duly posted and published."

It is clear, therefore, that since any device which results in the intended prohibition is an unlawful rebate, an expense-paid trip to the Kentucky Derby for shipper employees can be unlawful if the result is the prohibited deviation from the published tariffs.

The issue therefore concerns whether or not the information alleges sufficient facts. The elements of the offense are (1) the granting or giving of a rebate (2) from the published and filed rates (3) for the transportation of property (4) by a carrier engaged in interstate commerce. *Chicago, St. P., M. & O. Ry. Co. v. United States,* 162 F. 835, 838 (8th Cir. 1908).

An indictment which distinctly and clearly charges each and every element of the offense intended to be charged and distinctly advises the defendant of what he is to meet at trial is sufficient. *Armour Packing Co. v. United States, supra,* 209 U.S. at 84, 28 S.Ct. 428. *Chicago, St. P., M. & O. Ry. Co. v. United States, supra,* at 838.

The information in this case, in addition to setting forth the alleged time, place of shipments, tariff charge, the shipper, and carrier, alleges that the defendant did knowingly and unlawfully offer, grant and give a rebate by furnishing the shipper's employee a valuable consideration through the device of an expense-paid trip to the Kentucky Derby.

The trier of fact must (1) find facts to be true as charged in the information, (2) believe the effect of what was done was to have the goods in question transported at a lesser rate than named in the tariffs, and (3) that the defendant did the act knowingly and intentionally and knew that it was departing from the rate, and that the effect of what it was doing was to diminish the cost of transportation and that it intended to do so. *Chicago St. P. M. & O. Ry. v. United States, supra,* at 843.

The cases do not support the position that the government must necessarily allege facts of any more particularity

than those set forth in the information. The Supreme Court in the *Armour Packing Co.* case makes reference to *Ledbetter v. United States,* 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162 (1897). The Court there at page 612, 18 S.Ct. at page 776 stated:

"Notwithstanding the cases above cited from our Reports, the general rule still holds good that upon an indictment for a statutory offense the offense may be described in the words of the statute, and it is for the defendant to show that greater particularity is required by reason of the omission from the statute of some element of the offense. Where the statute completely covers the offense, the indictment need not be made complete by specifying particulars elsewhere obtained."

This principle has been upheld in a long line of cases. More recently in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, 620, 621 (1974), an obscenity case, the Supreme Court held that it was generally sufficient to set forth the offense in the words of the statute as long as the indictment includes a statement of the facts and circumstances as will inform the accused of the specific offense. The Court there held that the legal definition of obscenity did not change with each indictment and that it was a term sufficiently definite in legal meaning to give the defendant notice of the charge against him.

■ Here the defendant is charged with knowingly and unlawfully giving a rebate to a shipper by the device of an expense-paid trip to the Kentucky Derby. The information contains the elements of the offense, informs the defendant of the charge against which it must defend, and further enables the defendant to plead an acquittal or conviction as a bar to further prosecution. These are the requirements as to the sufficiency of an information or indictment. *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1931). *United States v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953).

## II.

CAN CONSTITUTIONAL ARGUMENTS BE RAISED ON THE BASIS THAT THE PROSECUTION IN THIS INSTANCE REQUIRES A BROADENING OF THE TERM "REBATE" OR IN THE ALTERNATIVE, IS THE STATUTE UNCONSTITUTIONALLY VAGUE AND INDEFINITE?

■ Defendant contends that the prosecution in this instance amounts to a broadening of the term rebate and that such an interpretation should first be tested by civil action. The defendant also contends that the statute is unconstitutionally vague and indefinite. Essentially, these issues involve the question of notice.

■ A criminal statute must be sufficiently definite to give notice of the required conduct. However, most statutes must deal with untold and unforeseen variations in factual situations. No more than a reasonable degree of certainty can be demanded. *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed 367 (1951).

■ Where the offense is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of the law. *Screws v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944).

■ Under the rule requiring that the law give fair notice of the offending conduct, regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed. See *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

■ The Supreme Court in *United States v. National Dairy Products Corp.*, 372 U.S. 29, 36, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) has also distinguished cases involving the First Amendment where vagueness of the statute "on its face" may itself deter a constitutionally protected conduct. In that case, the statute was directed at conduct designed to destroy competition. There being no First Amendment issue, the Court considered the warning in terms of the statute "on its face" and also in light of the conduct to which it is applied.

In *Boyce Motor Lines v. United States, supra,* the court held that it was not unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line. The Court reasoned that the statute only punished those who knowingly violated the regulation in question and thus, the element of culpable intent did much to destroy the argument that the regulation was so unfair that it must be held invalid. See also *United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1946) where the Court ruled that although there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls, this is not a sufficient reason to hold the language too ambiguous to define a criminal offense.

The cases hold that the purpose of Congress was to establish uniform rates for transportation and to give all the same opportunities to know what the rates are, as well as the equal benefit of them. In the opinion by Justice Harlan in *Louisville & N. R. Co. v. Mottley*, 219 U.S. 467, 477, 31 S.Ct. 265, 268, 55 L.Ed. 297 (1910), it is stated that:

"The statute manifestly means that the purchase of a transportation ticket by a passenger, and its sale by the company, shall be consummated only by the former paying cash and by the latter receiving cash of the amount specified in the published tariffs."

At page 476, 31 S.Ct. at page 268, Justice Harlan can be further quoted:

"But an examination of the schedules would be of no avail and would not ordinarily be of any practical value if the published rates could be disregarded in special or particular cases by the acceptance of property of various kinds, and of such value as the parties immediately concerned chose to put upon it, in place of money for the services performed by the carrier."

In order to effectuate the purpose of Congress, it is necessary that the transaction between shipper and carrier shall, in its totality, involve the paying of the scheduled tariff by the shipper in return for the transportation provided. Any other unscheduled inducement, gift, or concession, in whatever form, between carrier and shipper, if not unlawful, will be perilously close to crossing the line of proscribed conduct.

The defendant contends also that the government should first proceed by civil enforcement in this matter. There is little or no support for this position in either the statute or the cases involving rebates. Section 322(b)(1) provides for enforcement by injunction and Section 322(b)(2) provides a remedy for injured persons. By proceeding in a criminal action under Section 322(c), the government has increased its burden. It must prove beyond a reasonable doubt the allegations made including the necessary element of criminal intent.

The defendant refers to *United States v. Critzer*, 498 F.2d 1160 (4th Cir. 1974), a tax case, where the court ruled that where the government by criminal prosecution was attempting to expand or alter a past given judicial interpretation, the appropriate vehicle was a civil action and not prosecution which intended potential loss of freedom. The potential

loss of freedom does not exist in this instance. Furthermore, this court need not expand or alter a past given judicial interpretation. In fact, the court may rely on a judicial interpretation dating back to the turn of the century.

The cases ·above cited are consistent in holding that any and all devices can come within the statutory prohibition. The ultimate issue is the effect of the alleged device and not whether the particular conduct or device comes within any given, restricted, or enumerated list of acts. In this sense, Congress and the courts have consciously anticipated the many unforeseen variations and situations which may arise.

The United States Court of Appeals for the Fifth Circuit in *United States v. Mann,* 517 F.2d 259 (1975), recently held that neither the absence of earlier prosecutions nor the failure of the appropriate government regulatory agency to provide guidelines constitutes the sort of "active misleading" by the government that bars a prosecution under the rationale of *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), and *United States v. Laub,* 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1966). That case dealt with a novel indictment charging a bank president with conspiring to misapply funds. In this case, in view of the Interstate Commerce Commission's Administrative Interpretations—Statement of Policy, there is no active misleading by the government. On the contrary, the defendant was on notice of the Commission's intent to prosecute this type of conduct.

The motion to dismiss the information is denied.