**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Gurpartap Singh BIRK, Sukhvinder Singh, Virinder Singh, Jasbir Sandhu and Jatinder Singh Ahluwalia, Defendants-Appellees.**

**No. 85–3538.**

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 3, 1986.

200

Mervyn Hamburg, Justice Dept., Washington, D.C., John P. Volz, U.S. Atty., Douglas N. Frazier, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellant.

Richard B. Stricks and Joseph Meyer, Jr., New Orleans, La., for Virinder, Sandhu.

John W. Reed, New Orleans, La., for Birk.

Ronald J. Rakosky, New Orleans, La., for Sukhvinder Singh.

George R. Simno, III, New Orleans, La., for Jatinder Singh Ahluwalia.

Before GEE, POLITZ, and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

Defendants, a group of Sikhs, were charged with conspiring to assassinate the Chief Minister of an Indian state while he was in New Orleans last spring. The district court dismissed the indictment, ruling that it failed to state a federal offense because the Chief Minister was not a "foreign official, official guest, or internationally protected person" as required under 18 U.S.C. § 1116. We conclude that the target of this conspiracy was "designated" an "official guest" so as to establish a federal offense under 18 U.S.C. §§ 1116 and 1117. Accordingly, we reverse.

I.

The facts are, for the most part, undisputed.[1] In May 1985, Bhajan Lal, the Chief Minister of the state of Haryana, India, came to New Orleans for eye surgery.[2] Before his arrival the Indian embassy notified the State Department of his impending visit, expressing concern that Lal, a Hindu, might be the target of an attack by Sikh extremists. Although State Department

1. To the extent any facts are disputed, on review "we take all the allegations of the indictment as true." *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332 n.16, 96 L.Ed 367 (1952); *United States v. Barta,* 635 F.2d 999 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981).

2. The reader is assured that this is a real case, not a moot one.

personnel did not follow their customary paperwork procedures for designating Lal as an official guest, they initiated security measures to protect Lal. The State Department directed its local special agent, named Nagel, to alert the New Orleans Police Department of Lal's expected arrival, which he did. Several days later the FBI notified the State Department that two Sikhs had attempted to recruit someone to assassinate Lal. Nagel, as instructed by his superiors in Washington, D.C., relayed this information to the New Orleans police and requested them to increase the number of officers assigned to protect Lal. The State Department directed Nagel to continue monitoring the situation. The following day the FBI reported to the State Department that the two Sikhs had purchased a weapon in Alabama and were en route to New Orleans to assassinate Lal. Nagel notified the police and then participated in the ensuing events. That evening three of the defendants were seen in the vicinity of Lal's hotel. They were detained and later arrested. During that time, one of them told police officers that the members of the group were "together" and that they had come to "hurt him." Subsequently, the State Department dispatched a detail of seventeen special agents to further protect Lal.

The Government indicted the five defendants for conspiring to kill Lal in violation of 18 U.S.C. §§ 1116 and 1117. Section 1116 makes killing or attempting to kill a "foreign official, official guest, or an internationally protected person" a federal crime.[3] Under § 1117, conspiring to violate § 1116 is also a federal crime.[4]

The superseding indictment alleges that Lal was a "foreign official, internationally protected person, and official guest" as defined in § 1116. The district court entered an order dismissing the indictment on the grounds that Lal did not fall within any of these three classifications. The Government brings this appeal pursuant to 18 U.S.C. § 3731. The Government does not appeal the court's ruling that Lal did not qualify as an "internationally protected person," but does challenge the court's determination that Lal was not an "official guest" or a "foreign official."

The issue is whether the Secretary of State, through the State Department's actions, "designated" Lal an "official guest" within the meaning of § 1116.[5] Section 1116(b)(6) defines an "official guest" as "a citizen or national of a foreign country present in the United States as an official guest of the Government of the United States pursuant to designation as such by the Secretary of State." The defendants argue that Chief Minister Lal does not qualify as an "official guest" because the State Department failed to complete the paperwork required by its internal procedures. The Secretary of State promulgated these procedures pursuant to his statutory rule-making authority. 22 U.S.C. § 2658. Under these rules, the Secretary delegated the task of designating official guests to the Chief of Protocol. 22 C.F.R. § 2.4 (1985). The Chief of Protocol receives requests for such designations through regular State Department channels and formally confers this status on foreign visitors by placing their names on an official guest roster.

**3.** Section 1116(a) provides:

"Whoever kills or attempts to kill a foreign official, official guest, or internationally protected person shall be punished as provided under sections 1111, 1112, and 1113 of this title, except that any such person who is found guilty of murder in the first degree shall be sentenced to imprisonment for life, and any such person who is found guilty of attempted murder shall be imprisoned for not more than twenty years.

**4.** Section 1117 provides:

If two or more persons conspire to violate section 1111, 1114, or 1116 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

**5.** Because we ultimately conclude that the Secretary of State designated Lal an "official guest," we do not reach the question whether Lal qualified as a "foreign official."

The Government contends that the State Department's internal procedures should not be dispositive of Lal's status. Despite formal inaction, the United States avers that "the actual treatment of Chief Minister Lal as an official guest was sufficient to confer federal jurisdiction over the attempt to murder him." It contends that the State Department's activities in protecting Lal rise to the level of "designation" as an "official guest." These actions evince the State Department's special interest in Lal, distinguishing him from the ordinary foreign visitor. The Department treated him as an "official guest," although he was not formally named one. Furthermore, had the Chief of Protocol received a request, Lal's name would have been placed on the "official guest roster."

Defendants respond that it is immaterial whether Lal "could have been, would have been, or was treated" as an "official guest." There is no evidence that the Secretary of State or Chief of Protocol made this designation, or that anyone requested them to designate Lal as an "official guest."[6] Defendants suggest that "designation" implies a formal procedure, and there is no indication that Congress intended an uncommon definition of that term.

The United States suggests in addition that the State Department's non-compliance with its internal procedures is irrelevant to this criminal proceeding. It relies on *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), where an Internal Revenue Service agent failed to comply with IRS regulations on the electronic monitoring of conversations. The Government sought to introduce the tapes of several conversations as evidence in the taxpayer's criminal trial. The Court held that where neither the Constitution nor federal law mandate the procedures, a court need not enforce these procedures in a criminal trial. Here, the statute does not mandate the procedures adopted by the Secretary of State and Congress did not

provide guidelines by which the Secretary should make the designation. The whole structure was a departmental project. In addition, the defendants have no Constitutional, i.e. due process, rights in seeing that the State Department followed its internal procedures; to sustain a conviction under this statute, the Government need not show the defendants knew of the victim's "official guest" status. The defendants respond that *Caceres* is inapposite because it involves an evidentiary, not a jurisdictional, issue. They reiterate that for jurisdiction to exist under § 1116 on the basis of the victim's "official guest" status, the Chief of Protocol must have granted that status.

## II.

This is a case of first impression. "As in all cases of statutory construction, our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). More than a decade ago, the Congress recognized the nation's special obligations under international law to protect certain foreign visitors, yet at that time no federal jurisdiction existed to permit the government to act directly to discharge those obligations. For the prosecution of those who perpetrated violence against foreign visitors on United States soil, the United States had to rely on the cooperation of state authorities, with no way to assure the foreign country that such cooperation would be forthcoming or that the local resources would be adequate. H.Rep. 1268, 92d Cong., 2d Sess. 7 (1972). The law establishes federal jurisdiction, concurrent with the states, to proceed against those who commit violent acts against foreign officials, their family members, or against official guests, and thus "adversely affect the foreign relations of the United States." Declaration of Policy, Pub.L. 92–539, 86 Stat. 1070 (1972).

---

**6.** Defendants also note there is no evidence that Lal was ever invited by the Government. We find no requirement in the language of the statute or in the legislative history that the foreign visitor must have been invited by the Government to obtain "official guest" status.

The original House Bill covered only "foreign officials." Then, before the Senate considered the legislation, the Israeli Olympic athletes were murdered in Munich. In reaction to this terrorist outrage, Senator McClellan confected the "official guest" category, noting that "had the situs of the tragedy been the United States, no federal jurisdiction would exist despite the fact that our responsibilities would parallel those which exist vis-a-vis visiting diplomatic personnel." The Committee agreed with Senator McClellan and added in its committee report that the official guest provision not only would cover foreign visitors such as Olympians, but would "also operate to protect the rights of visiting artists, academic and scientific groups, and other groups *and individuals who ought not be beyond the pale of Federal concern.*" S.Rep. 1105, 92d Cong., 2d Sess. 9 1972, *reprinted in* U.S. Code Cong. & Ad. News 4316, 4319 (emphasis added). Congress accepted the Senate amendment, thus vesting wide discretion in the Secretary of State to determine who should be accorded "official guest" status.

Defendants rest their argument on the failure of the Chief of Protocol to designate Lal formally as an "official guest." We therefore direct our attention to the requirements that must be satisfied to effect a "designation," interpreting the statute according to its plain language as we customarily do unless a clear, contrary legislative intention is apparent. *United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). *Webster's Third New International Dictionary* defines "designate," in pertinent part, as "to choose and set apart" or "to distinguish as to class." The essence of "designation," in this context, is distinguishing one class of foreign visitors—"official guests"—from other foreign visitors. The question is whether the State Department decided to place Lal in this special class. The record shows that the State Department took substantial measures to insure Chief Minister Lal's safety while he was in the United States. Even before Lal's arrival, the State Department had initiated communication with the New Orleans Police Department; their local agent continued to inform the police and to monitor the situation as it unfolded. Then, the State Department went so far as to dispatch special agents to protect Lal against a Sikh attack. It is obvious that the State Department does not take such measures on behalf of ordinary foreign visitors. This conduct in itself demonstrates that decisions were made within the Department to place Lal within a class receiving special treatment. We find this conduct more than adequately demonstrates the State Department's special interest in this foreign visitor, one whose presence in the United States is of significance to our nation's foreign affairs.[7]

■ We have no difficulty concluding that the State Department can confer "official guest" status not solely through ministerial acts, but by its informal conduct as well. The statutory language and legislative history do not indicate that Congress was concerned with the method by which the Secretary of State designates foreign visitors as "official guests."[8] To the contrary, the record shows that, in practice, the Chief of Protocol's formal designation does not dictate when and what federal resources will be expended in the treatment of foreign visitors on our soil. Sensitive

---

7. Today's case involves State Department conduct occurring before and during an alleged criminal conspiracy. We do not pass on the issue whether, through formal procedures or through conduct, the Secretary of State may designate an individual an "official guest" after the occurrence of the criminal acts in question.

8. The Supreme Court's decision in *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), supports our conclusion. *Caceres* teaches that a court need not enforce an agency's procedures in a criminal trial, when neither federal law nor the Constitution mandate those procedures. Today's case involves only statutory interpretation. We conclude that § 1116 allows the Secretary of State to make "official guest" designations either through State Department conduct or through the Department's formal procedures. Thus, *Caceres* more than assures us that we are not left at the mercy of the State Department's internal procedures in this criminal proceeding.

diplomatic considerations animate such decisions as these.

 We are satisfied that Congress intended to extend federal prosecutorial jurisdiction to cases such as this one. An Indian dignitary was on United States soil. A Hindu, he was a member of a group that had been attacked by Sikh extremists in the recent past. Had harm come to him in the United States, such a thing was no matter of governmental indifference and might well have affected our foreign relations with India. In light of this, it would be both short-sighted and small-minded to turn the question of federal jurisdiction on the completion of a ministerial task, when Congress intended that federal prosecutorial machinery be available in matters implicating the conduct of this country's foreign affairs.

Accordingly, we REVERSE the district court's order dismissing the indictment and REMAND for further proceedings consistent with this opinion.