**UNITED STATES of America**

v.

**Kishor VAGHELA, Larry R. Levine, Gary R. Levine.**

**No. 97–68–CR–T–17C.**

United States District Court, M.D. Florida, Tampa Division.

June 13, 1997.

Louis Kwall, Gross & Kwall, P.A., Clearwater, FL, for Kishor Vaghela.

William F. Jung, Laurin E. Bryant, Black & Jung, P.A., Tampa, FL, for Larry R. Levine.

Laurin E. Bryant, Black & Jung, P.A., Tampa, FL, Fred A. Schwartz, for Gary R. Levine.

## ORDER DENYING LEVINES' MOTION TO DECLARE MEDICARE ANTI-KICKBACK STATUTE VOID FOR VAGUENESS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendants LARRY R. LEVINE's and GARY R. LEVINE's (hereinafter, collectively, the Levines) motion to declare the Medicare anti-kickback statute void for vagueness as applied (Docket Nos. 34–35) and the Government's response (Docket No. 44) thereto.

### FACTS

The indictment in this case contains fifteen (15) counts, fourteen (14) of which involve the Levines. In Count I, the Levines and co-defendant KISHOR VAGHELA (hereinafter Vaghela) are alleged to have conspired to violate the Medicare anti-kickback statutes, in violation of 18 U.S.C. § 371. In Counts II through XXIV, the Levines and Vaghela are charged with substantive violations of the Medicare anti-kickback statute, in violation of 42 U.S.C. § 1320a–7b(b)(1)(A) and 18 U.S.C. § 2. Finally, in Count XXV, Vaghela is alleged to have conspired to obstruct justice, in violation of 18 U.S.C. § 371.

The instant motion involves only Counts II through XXV and the Levines' alleged involvement in thirteen (13) separate violations of the Medicare anti-kickback statute, 42 U.S.C. § 1320a–7b(b)(1)(A). Specifically, the Levines argue that this statute is void for vagueness as applied to their case. The statute reads, in pertinent part:

> [W]hoever knowingly and willingly solicits and receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of a felony and upon conviction thereof, shall be fined not

more than $25,000 or imprisonment for not more than five years, or both.

*Id.* (internal number omitted). The words "person" and "including" are defined in 42 U.S.C. § 1301(a)(3), (b); the phrase "Federal health care program" is defined in 42 U.S.C. § 1320–7b(f)(1)–(2).

With regard to Counts II through XXV, the indictment in this case states:

> On or about the dates [set forth in a table, ranging from August 20, 1993, to August 23, 1994], in the Middle District of Florida, the defendants,

> **KISHOR VAGHELA,**

> **LARRY R. LEVINE,**

> **and**

> **GARY R. LEVINE,**

aided and abetted by each other, did knowingly and willfully solicit and receive remuneration in return for referring individuals to Extendicare for the furnishing of medical treatment and services reimbursable under the Medicare Part B program.

> [A table is listed with 13 different dates and the corresponding amount of monetary remuneration]

> In violation of Title 42, United States Code, Section 1320a–7(b)(1)(A), and Title 18, United States Code, Section 2.[1]

(Docket No. 1). In another portion of the indictment, the grand jury charges that the thirteen (13) monetary remunerations took the form of checks drawn on the account of Extendicare Clinical Laboratory—the facility that performed the reimbursable services on persons referred by Doctors Larry and Gary Levine—to Vagela,[2] the office manager of the Levine's clinic. (Docket No. 1, p. 4, ¶ 13).

The Levines point out that, unlike Vagela, they are not alleged to have received the monetary remunerations, nor to have solicited or arranged for the services rendered by Extendicare. Rather, the Levines contend that the Government is relying solely on a *Pinkerton* or aider/abettor theory of liability.

The Government does not respond specifically to this argument.

## DISCUSSION

■ The vagueness doctrine was developed by the Supreme Court of the United States as a "basic principle of due process." *Grayned v. City of Rockford,* 408 U.S. 104, 107, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). It requires a criminal statute to be "sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violations." *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330–31, 96 L.Ed. 367 (1952). It is said that:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned,* 408 U.S. at 108–09, 92 S.Ct. at 2298–99. Of course, the words and phrases in statutes do not have to be defined with mathematical precision; "no more than a reasonable degree of certainty can be demanded." *Boyce,* 342 U.S. at 340, 72 S.Ct. at 331.

■ In addition to a plain reading of the statute, four (4) factors affect the vagueness analysis: (1) whether the subject matter is purely economic; (2) whether the penalties are civil or criminal; (3) whether there is a scienter requirement; and (4) whether the statute "threatens to inhibit the exercise of constitutionally protected rights," such as "the right of free speech or of association."

---

**1.** 18 U.S.C. § 2 allows aiders and abetters to be treated as principals.

**2.** The indictment does not specify of whom these checks were paid to the order.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982) (hereinafter the *Hoffman* factors). The latter factor is "perhaps the most important" one. *Id.* at 499, 102 S.Ct. at 1193. Where, as here, a criminal statute is challenged as applied—as opposed to on its face—this Court "need only examine the vagueness of the statute in light of the particular facts of this case." *United States v. Waymer*, 55 F.3d 564, 568 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1350, 134 L.Ed.2d 519 (1996).[3]

Few circuit courts have addressed the vagueness of the Medicare anti-kickback statute. On appellate review of the first prosecution under the 1972 version of the Medicare anti-kickback statute,[4] the United States Court of Appeals for the Fifth Circuit (prior to the creation of the Eleventh Circuit) reversed the convictions of several Miami doctors and a laboratory operator. *United States v. Porter*, 591 F.2d 1048 (5th Cir.1979). The court concluded that the defendants' actions did not constitute "bribes" or "kickbacks", as those terms are "commonly and ordinarily understood." *Id.* at 1053. While the court expressed doubt over whether the statute provided "clear warning" to the defendants, *id.* at 1054, it did not find or otherwise expressly state that the statute was unconstitutionally vague.

Unlike the Fifth Circuit in *Porter,* the First Circuit affirmed the Medicare anti-kickback convictions of an ambulance company, its president, and a hospital official in *United States v. Bay State Ambulance & Hospital Rental Service Inc.*, 874 F.2d 20 (1st Cir.1989). The court rejected the defendants' as-applied vagueness challenge to a related subsection[5] of the statute at bar, finding its subject matter purely economic, non-threatening to constitutional rights, and requiring proof of an "unusually high scienter requirement." *Id.* at 32–33. The court emphasized that, in addition to its "knowing and willful" requirement, the statute required proof that the defendant acted with the purpose of inducement.

The Ninth Circuit, in a civil case, has addressed the vagueness of another subsection of the Medicare anti-kickback statute, 42 U.S.C. § 1320a–7b(b)(2)(B).[6] *Hanlester Network v. Shalala,* 51 F.3d 1390, 1397–98, 1400 (9th Cir.1995). Applying the *Hoffman* factors, the *Hanlester* court concluded that "[t]he statute gives fair warning of what is prohibited and is not unconstitutionally vague." *Id.* at 1398. It reasoned that the statute regulated only economic conduct, did not chill any constitutional rights, and allowed for criminal penalties only upon proof of "knowing and willful" conduct, which the

---

3. Of course, all "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

4. In 1972, the Medicare Anti-kickback statute read:

> Whoever furnishes items or services to an individual for which payment is or may be made under this subchapter and who solicits, offers, or receives any kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment ... shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

42 U.S.C. § 1395nn(b)(1) (1972) (internal number omitted).

5. The Medicare anti-kickback statute was codified as 42 U.S.C. § 1395nn at the time of *Bay State.* The text of the current codification, 42 U.S.C. § 1320a–7b(b), is functionally equivalent

to this prior version. Although the *Bay State* court did not specify under which subsection the defendants were prosecuted, it was not the same subjection under which the Levines are indicted. A footnote in the opinion omits the predecessor version of § 1320a–7b(b)(1)(A), yet recites § 1320a–7b(b)(1)(B) and (b)(2)(B). 874 F.2d at 22 n. 1.

6. At the time of the relevant conduct in *Hanlester,* this subsection read:

> [W]hoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person ... to purchase, lease, order or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony ....

42 U.S.C. § 1320a–7b(b)(2)(B) (1988) (internal numbers omitted). This subsection reads the same today.

court construed as requiring the accused to "(1) know that [the Medicare anti-kickback statute] prohibits offering or paying remuneration to induce referrals, and (2) engage in prohibited conduct with the specific intent to disobey the law." *Id.* at 1398, 1400.

In their half (½) page motion and two and a half (2½) page memorandum, the Levines argue that, as alleged co-conspirators, aiders or abettors under 42 U.S.C. § 1320a–7b(b)(1)(A), the "high scienter requirement that *Hanlester* and *Bay State* imposed to save the statute is insufficient here." (Docket No. 35, p. 2). In its five (5) paragraph response, the Government relies on the *Porter* court's observation that, since the 1977 amendments to Medicare anti-kickback statute, "the descriptions of the crime are much more specific." (Docket No. 44, p. 2, ¶ 5; quoting *Porter*, 591 F.2d at 1054).

■ The Court concludes that the Medicare anti-kickback statute, specifically 42 U.S.C. § 1320a–7b(b)(1)(A), is not unconstitutionally vague as applied to the Levines' case. First and foremost, the plain meaning of the statute easily put the Levines on notice of what conduct is unlawful. In particular, it is clear that, in conjunction with the aiding and abetting statute, the Medicare anti-kickback statute encompasses the Levines' sending patients to Extendicare for prescribed medical services in return for checks tendered to the Levines' alleged co-conspirator and officer manager, Vaghela. The same is true if the Levines merely "solicited" remuneration from Extendicare; the Levines need not have actually received any money.[7]

An application of the *Hoffman* factors also support the instant conclusion. Consistent with *Hanlester* and *Bay State*, the Court finds the Medicare anti-kickback statute to be economic in nature and free from any chilling effects on constitutionally protected rights. It is true that the statute at bar is a criminal one; it even has felony penalties. However, the statute's specific intent requirement, "knowing and willfully", ensures that these penalties will not be imposed on the Levines arbitrarily and without fair warning.

The Levines' concern about an insufficient mens rea requirement is without merit. Regardless of the Levines' alleged role in Counts II through XXIV, the Government will have to prove that they acted "knowingly and willfully." Scienter does not disappear from a criminal statute simply because a defendant is charged as a co-conspirator, aider, or abettor; the defendants have failed to advance any authority that says otherwise. Rather, someone working behind-the-scenes can easily be as culpable as a principal, i.e., one doing the "dirty work." Otherwise, Congress would not have included once-removed words such as "indirectly", "covertly", and "arranging" in the Medicare anti-kickback statute.

Unlike the *Hanlester* appellate court, this Court, at this pre-trial stage, will not attempt to further define "knowingly and willfully" for purposes of trial. The undersigned will leave that task to the parties and the trial judge at the jury instruction conference, absent changes-of-pleas. Accordingly, it is

**ORDERED** that the motion to declare the Medicare anti-kickback statute void for vagueness as applied (Docket Nos. 34) be **DENIED.**

---

**7.** Although the indictment alleges that the Levines "solicited and received" remuneration, the Government need only prove in the disjunctive in conformity with the statute. *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir.1989).