NO. 12-04-00181-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE 
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF D.H.                                    §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant D.H. appeals from an order to administer psychoactive medication. After a hearing
without a jury, the trial court entered an order authorizing the Texas Department of Mental Health
and Mental Retardation to administer psychoactive medication to D.H. In three issues, D.H. asserts
that the evidence is legally and factually insufficient to support the order and the administration of
psychoactive medication by force is unconstitutional. We affirm.
 
Background
            On May 27, 2004, an application was filed requesting the court order an authorization for the
administration of psychoactive medication to D.H. The application, filed by Dr. S. Siddiqui, recited
that D.H., who suffers from psychosis N.O.S., is subject to an order for temporary mental health
services. Dr. Siddiqui indicated that D.H. refuses to take the medication voluntarily. The doctor
believes D.H. lacks the capacity to make a decision regarding administration of psychoactive
medication because he is loud and threatening and lacks insight.


 Dr. Siddiqui determined that the
requested medication is the proper course of treatment for D.H. and, with this treatment, his
prognosis is fair. Conversely, without the treatment, D.H.’s mental health may further deteriorate. 
Medical alternatives would not be as effective as administration of psychoactive medication and the
benefits of psychoactive medication outweigh the risks. 
            Dr. Siddiqui testified at the June 1 hearing, stating that D.H., who is under court-ordered
temporary mental health services, refused to take his medications voluntarily and lacks the capacity
to make a decision regarding the administration of psychoactive medications. Dr. Siddiqui stated
that D.H. is suffering from psychosis N.O.S. The doctor testified that the medications indicated in
the exhibit attached to the application are in the proper course of treatment for D.H. and in his best
interest. He explained that D.H. would likely benefit from taking these medications and the benefits
outweigh the risks. D.H.’s hospital stay would likely be shortened if medications are used.
            On cross-examination, Dr. Siddiqui explained that, at the time of his admission, the admitting
doctor believed D.H. had the capacity to make a decision about the use of medications. He discussed
the possible use of medications with D.H., and D.H. seemed to understand the nature of the
conversation. Initially, D.H. agreed to take medications, but later decided not to take them. Dr.
Siddiqui testified that D.H. did not understand the doctor’s explanations about the effects and uses
of the medications. D.H. took his medications on one day only before declining to take them. 
            The doctor explained that when D.H. told him that a particular medication was not helping,
he prescribed a different medication. The doctor testified that, when prescribing medication, he
takes into consideration the effect the medications have had in the past. He asks D.H. about the
effects of the medications and relies on D.H.’s responses, as well as the treatment team’s response. 
            Dr. Siddiqui said D.H. takes his medication “[o]n and off, when he feels like it.” When he
agrees to medication, it is given to him. When he does not agree, he is given emergency injections. 
Dr. Siddiqui explained that it is routine procedure to maintain close observation for ill side effects. 
When ill side effects are observed, the medication is changed or eliminated. The doctor anticipated
that, with the prescribed medication, D.H. would need to remain in the hospital at least two to three
weeks. However, his stay may be shorter or longer, depending on how he responds to the
medication.
            On redirect examination, Dr. Siddiqui further explained that he based the two to three week
estimate on D.H.’s response to the medication. Because D.H. feels that he needs more of one
particular medication, the doctor will give him more and see how D.H. responds. 
            D.H. testified in his own behalf. He said he is scared of the medications because they have
bad side effects. His jaw has gotten stuck twice because of medication he called “Geodon” that he
had been given. He said he only turned down medication two times, and he talked to the doctor
about his medications the next day. The doctor changed his medication to Seraquel, and he has not
turned down that medication. He stated that Ativan helps with anxiety, and he is taking Remeron
by agreement. He declines to take other medications the doctor has suggested because of past
experience.
            D.H. had been ordered committed for temporary in-patient mental health services on May 20,
2004. The trial court entered an order to administer psychoactive medication for the period of
temporary commitment.
 
Sufficiency of the Evidence
            In his first issue, D.H. asserts the evidence is neither legally nor factually sufficient to support
the order to administer psychoactive medication. He contends that the State did not prove by clear
and convincing evidence that he lacks the capacity to make a decision regarding administration of
psychoactive medication. He argues that he understands the effects that taking certain psychoactive
medications can have and therefore has the requisite capacity. He asserts that the evidence shows
that the doctor determined D.H. lacked capacity only when D.H. did not agree with the doctor’s
assessment of appropriate medications. Further, he contends there is either no evidence or
insufficient evidence that he did not have the intelligence to understand the consequences of his
decision not to take psychoactive medication. He argues the State did not show that substantial
impairment would occur absent the use of these medications. He also contends there is no evidence
indicating he would pose harm to himself or others if he were not medicated or that his condition
was significantly deteriorating without the use of medication. Therefore, in light of the possible side
effects, use of these medications cannot be viewed as a benefit to him. Because D.H.’s interest in
remaining free of severe side effects clearly outweighs the State’s interest in forcing medication on
a nondangerous individual, he argues, the order should be reversed.
 
Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 
            In addressing a factual sufficiency of the evidence challenge, we must consider all the
evidence in the record, both in support of and contrary to the trial court’s findings. In re C.H., 89
S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing. Id. at 25. We must determine
whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations. Id. We must consider whether disputed evidence is such that a
reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. In
re J.F.C., 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the
factfinder. In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of
the witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
Applicable Law and Analysis
            The court may enter an order authorizing the administration of psychoactive medication if
it finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). In determining that there
is a need for psychoactive medication, the court is required to consider the following:

              (1) the patient’s expressed preferences regarding treatment with psychoactive medication;

              (2) the patient’s religious beliefs;

              (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

              (4) the consequences to the patient if the psychoactive medication is not administered;

              (5) the prognosis for the patient if the patient is treated with psychoactive medication; and

              (6) alternatives to treatment with psychoactive medication.
 
Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003).
            Dr. Siddiqui testified that D.H. was, at the time of the hearing, under an order for temporary
mental health services. The doctor testified that D.H. suffers from psychosis N.O.S. and lacks the
capacity to make a decision regarding administration of psychoactive medication. The medications
are in D.H.’s best interest, the benefits outweigh the risks, and his hospital stay would be shortened
if medications are used. Dr. Siddiqui testified that D.H. did not understand his explanations about
the effects and uses of the medications, took his medications voluntarily on one day only, and takes
his medication when he feels like it. 
            Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that D.H. lacked the capacity
to make a decision regarding administration of the proposed medication. See In re J.F.C., 96
S.W.3d at 266. This evidence satisfies the statutory requirement for clear and convincing evidence
in support of the order for administration of psychoactive medication. See Tex. Health & Safety
Code Ann. § 574.106(a). The evidence is legally sufficient to support the trial court’s order. See
In re J.F.C., 96 S.W.3d at 266.
            In addressing D.H.’s factual sufficiency complaint, we consider all the evidence, giving due
consideration to evidence the factfinder could reasonably have found to be clear and convincing. 
In re C.H., 89 S.W.3d at 25. D.H. testified that he turned down medications only twice. He
explained that he is scared of the medications because he has experienced bad side effects. He
identified three medications that he agrees to take and stated that he declines other medications
because of his experience with those medications. Dr. Siddiqui testified that D.H. takes his
medication voluntarily “when he feels like it” and D.H. did not understand the effects and uses of
the medications. The doctor acknowledged the possibility of side effects and stated that he relies on
D.H. and the treatment team to provide information regarding the effect medications have had in the
past. He takes that information into account when prescribing medication. Hospital personnel
maintain close observation of patients for side effects and change medications as needed. In light
of the entire record, the evidence that the trial court could not have credited in favor of its findings
is not so significant that the trial court could not reasonably form a firm belief or conviction that
D.H. lacks the capacity to make a decision regarding the administration of the proposed medication
and that treatment with the proposed medication is in his best interest. See id. Thus, the evidence
is factually sufficient to support the trial court’s findings. See Tex. Health & Safety Code Ann.
§ 574.106(a). Because we hold the evidence is both legally and factually sufficient to support the
trial court’s order, we overrule D.H.’s first issue.
 
Constitutional Claims
            In his second issue, D.H. contends that forcibly administering mind-altering drugs to a
nondangerous mental patient is unconstitutional. He argues that his First Amendment right to
freedom of thought has been violated. D.H. did not present this claim to the trial court. A
constitutional claim must have been asserted in the trial court to be raised on appeal. Dreyer v.
Greene, 871 S.W.2d 697, 698 (Tex. 1993). Therefore, D.H. has not preserved this complaint for
review. We overrule D.H.’s second issue.
            In his third issue, D.H. contends that forcibly administering psychoactive medication to a
mental patient violates his right to substantive due process. He argues that avoiding the
administration of unwanted antipsychotic drugs is a significant liberty interest protected by the
Fourteenth Amendment due to the “numerous, debilitating, life-altering and sometimes even fatal”
side effects of the drugs. Further, absent a specific finding of dangerousness, he argues, his interest
in avoiding the forced administration of antipsychotic drugs outweighs the State’s interest in
providing medical treatment or reducing the danger he may present to himself or others. This
argument was not made in the trial court and is therefore waived. Id.
            Also in his third issue, D.H. asserts that Section 574.106 of the Texas Health and Safety Code
is violative of his constitutional rights to due process due to ambiguity in the terms “capacity” and
“best interest.” He argues that the terms are so overly broad, vague, and ambiguous that they render
themselves susceptible to a variety of interpretations. Further, he asserts, the statute lacks the use
of “objective measurement.” Accordingly, he argues, the statute allows for an arbitrary and
unreasonable interpretation where the harm done is immediate and sometimes irreparable.
            No complaint was made in the trial court that the term “best interest” is vague or that the
statute lacks the use of “objective measurement.” These complaints are not properly before us for
review. Id.
            When considering an attack upon the constitutionality of a statute, we begin with the
presumption that it is valid and that the legislature did not act arbitrarily or unreasonably in enacting
the statute. Robinson v. Hill, 507 S.W.2d 521, 524 (Tex. 1974). We must uphold the statute if a
reasonable construction can be determined that will render it constitutional. Rowan Drilling Co. v.
Sheppard, 126 Tex. 276, 279, 87 S.W.2d 706, 707 (Tex. 1935) (orig. proceeding). The burden rests
upon the individual challenging the statute to prove its unconstitutionality. Robinson, 507 S.W.2d
at 524. A civil statute would violate due process only if it commanded compliance in terms “so
vague and indefinite as really to be no rule or standard at all.” A.B. Small Co. v. American Sugar
Refining Co., 267 U.S. 233, 239, 45 S. Ct. 295, 297, 69 L. Ed. 589 (1925).
            D.H. argues that the term “capacity” is ambiguous, is not defined in the Code, and that
patients are deemed to lack capacity when their opinions differ from that of the treating physician. 
He claims there are reasons for refusing psychoactive medication that outweigh the State’s interest
in medicating a nondangerous patient and have nothing to do with a patient’s capacity to make a
decision as to proper medical treatment.
            D.H.’s argument speaks more to the sufficiency of the evidence to show if a patient lacks the
capacity to make a decision regarding the administration of medication rather than to the issue of
ambiguity in the term “capacity.” Further, D.H.’s statement to the contrary notwithstanding, the term
“capacity” is defined in the Health and Safety Code. “Capacity” is statutorily defined as a patient’s
ability to “understand the nature and consequences of a proposed treatment, including the benefits,
risks, and alternatives to the proposed treatment” and “make a decision whether to undergo the
proposed treatment.” Tex. Health & Safety Code Ann. § 574.101(1) (Vernon 2003). Therefore,
under Section 574.106(a), the trial court may authorize the administration of psychoactive
medication if it finds the patient is under an order for mental health services, the patient cannot
understand the nature and consequences of the proposed treatment, including benefits, risks, and
alternatives, rendering him unable to make a decision regarding administration of the proposed
medication, and this treatment is in the patient’s best interest. It is not required that statutes be
defined with mathematical exactitude, only that they provide fair notice, in light of common
understanding and practices. See Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S. Ct.
329, 330, 96 L. Ed. 367 (1952). Section 574.106 does provide fair notice. The statute does not
encourage arbitrary or discriminatory application. See Women’s Med. Ctr. v. Bell, 248 F.3d 411,
422 (5th Cir. 2001). We conclude that the term “capacity,” as used in Section 574.106, is not so
vague that people of common intelligence must guess at its meaning and would differ in its
application. See Smith v. Goguen, 415 U.S. 566, 572 n.8, 94 S. Ct. 1242, 1247 n.8, 39 L. Ed. 2d 605
(1974). 
            As to D.H.’s contention that Section 574.106 is overly broad, he offers no argument or
authority in support of that contention and therefore it is not presented for review. Beasley v. Molett,
95 S.W.3d 590, 609 (Tex. App.–Beaumont 2002, pet. denied). We overrule D.H.’s third issue.
  
Conclusion
            The evidence is legally and factually sufficient to support the trial court’s order authorizing
administration of psychoactive medication. Because Section 574.106 of the Texas Health and Safety
Code is not vague and ambiguous, it does not violate D.H.’s rights to due process.
            We affirm the trial court’s order for administration of psychoactive medication.
 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered December 8, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.




(PUBLISH)